THOMPSON BUKHER LLP
369 Lexington Avenue
Suite 327
New York, New York 10017
Telephone: (212) 920-6050
Facsimile: (646) 924-3040

*Attorneys for Plaintiff*

JUDGE McMAHON

'14 CV 7170

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SMALL BUSINESS BODYGUARD INC.,

                    *Plaintiff*,

– against –

HOUSE OF MOXIE, INC.,

                    *Defendant*.

**COMPLAINT**



Civ. Action No.
ECF Case

Plaintiff Small Business Bodyguard, Inc. ("SBBI" or "Plaintiff"), by and through its undersigned attorneys, as and for its Complaint against defendant, alleges on knowledge as to itself and otherwise on information and belief, as follows:

<u>**NATURE OF THE ACTION**</u>

    1.    This action arises from a contract entered into by Small Business Bodyguard Inc. and House of Moxie, Inc. ("HOM" or "Defendant"), dated June 7, 2014 (the "Agreement"), whereby HOM transferred to SBBI all of its right, title, and ownership interest in the intellectual property, goodwill, and business assets related to the Small Business Bodyguard brand and associated products, which offer business formation, development, and protection information, coaching, and advice to entrepreneurs and emerging businesses (the "Product").

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over Plaintiff's claims for copyright infringement, trademark infringement, and related claims pursuant to 17 U.S.C. §§ 101, *et seq.*, 15 U.S.C. §§ 1051, *et seq.*, and 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of New York pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under Federal Law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

4.      The Court has personal jurisdiction over Defendant under Section 7.1 of the Agreement. Plaintiff's claims arise out of the conduct that took place in this District, giving rise to personal jurisdiction over Defendant. Upon information and belief, Defendant has conducted acts of copyright infringement, trademark infringement, and breach of contract in this District by directing sales which infringe upon Plaintiff's rights to this District and by conducting regular business in this District.

5.      Venue is proper in this District pursuant to 28 U.S.C. 1391(b) and 28 U.S.C. 1400(b).

## PARTIES

6.      SBBI is a corporation organized and existing under the laws of the State of New Jersey.[1] It maintains its principal place of business at 120 County Road, Suite 204, Tenafly, NJ 07670.

---

[1] SBBI was formerly named Rachel Rodgers Consulting, Inc. ("RRC"), the named signatory to the JV Agreement and the Agreement.  On July 15, 2014, RRC filed a Certificate of Amendment

7.      Defendant HOM is a corporation organized and existing under the laws of the State of Delaware.  Upon information and belief, it maintains its principal place of business at 427 N. Tatnall Street, #54602, Wilmington, DE 19801.

## BACKGROUND

8.      On or about May 5, 2013, SBBI and HOM entered into a Joint Venture Agreement (the "JV Agreement") for the purposes of producing and selling the Product.

9.      Pursuant to the JV Agreement, SBBI was to perform research relating to, and draft all contents of, the Product, as well as manage the joint venture's operations and contribute to its marketing and public relations.

10.      SBBI performed all of its obligations arising from the JV Agreement.

11.      Pursuant to the JV Agreement, HOM was to edit the Product contents provided by SBBI, promote and facilitate the sale of the Product on an ongoing basis, and prepare the written content of other marketing materials for the sale of the Product.

12.      In or about August 2013, HOM drastically reduced its time commitment to fulfilling its obligations under the JV Agreement, persistently failing to perform in accordance with the JV Agreement.

13.      From December 2, 2013 to May 31, 2014, HOM only produced two promotion emails, which were almost entirely unusable, wholly failing to perform its obligations under the JV Agreement.

14.      On or about January 13, 2014, SBBI communicated concerns about HOM's failure to perform its duties under the JV Agreement to which HOM responded by proposing to renegotiate the JV Agreement.

---

with the New Jersey Division of Revenue & Enterprise Services to amend RRC's Certificate of Incorporation, amending its name to SBBI.

15.     On or about June 7, 2014, the parties agreed to terminate the JV Agreement.

16.     A Joint Venture Dissolution Agreement—the Agreement—was executed on that day.

17.     Pursuant to the Agreement, HOM would transfer all rights, title, and ownership interest in the intellectual property, related business assets, and goodwill in the Product, which was granted to HOM by virtue of the JV Agreement.

18.     As consideration for HOM's transfer of such rights, assets, and ownership interest, SBBI agreed to pay three installment payments of $5,000 to HOM, due on June 30, July 30, and August 30, 2013.

19.     The Agreement provided that failure to meet the deadlines for the installment payments would result in automatic termination of the Agreement, rendering it null and void.

20.     In that event, the Agreement provided that the parties' ownership of the Product would be "governed by the applicable joint ownership rules under US Copyright and Trademark law."

21.     In addition, under the Agreement, SBBI agreed to pay one hundred percent (100%) commission for each sale of the Product completed on the Small Business Bodyguard website (the "Website") by a customer who was directed to the Website through HOM's affiliate link for a period of two (2) years.  In the third year of the Term of the Agreement, SBBI agreed to pay seventy-five percent (75%) commission for each sale of the Product completed on the Website by a customer who was directed to the Website through HOM's affiliate link.

22.     The Website is located at the URL www.smallbusinessbodyguard.com, and was one of the assets transferred to SBBI under the Agreement.

23.     Almost immediately upon execution of the Agreement, HOM began making persistent inquiries to SBBI relating to the amount and calculation of the commission payments, which were tracked by a third-party software provider.

24.     Despite seeing reports of commission accumulation precisely in line with the requirements set forth in the Agreement, HOM sent urgent, emergency communications to SBBI demanding a detailed explanation of how the commissions were being tracked.

25.     On or about June 19, 2014, HOM announced publicly that it was no longer affiliated with the Product.

26.     On or about July 2, 2014, HOM requested specific information and clarification regarding the commission calculations and structure pursuant to the Agreement.

27.     SBBI responded to HOM's request that same day, addressing the questions to the best of SBBI's ability. On or about July 7, 2014, HOM purchased the Product through the affiliate link in order to test the commission structure established by the Agreement—this structure was also recorded and reported through the third-party software program (available to users, like HOM, via a web portal).

28.     On or about July 9, 2014, HOM sent to SBBI a formal notice of dispute pursuant to the Agreement, disputing the definition of "gross sales price" as defined in the Agreement.

29.     HOM claimed that it should be paid the finance charge applied to sales of the Product in addition to the retail sales price of the Product, contrary to the terms as set forth in the Agreement. On or about July 28, 2014, SBBI informed HOM that the June commission payment would be paid late due to unexpected difficulties arising from the newly-formed structure.

30.     On or about August 18, 2014, eighteen days after the commission payment was initially scheduled to be paid, HOM sent SBBI a letter attempting to rescind the Agreement,

claiming that the late commission payment was a material breach, notwithstanding contrary provisions in the Agreement, and asserting that "all intellectual property and other rights and interests covered in Agreement immediately revert to the relevant default rules of co-ownership" under U.S. intellectual property law.

31.     On or about August 18, 2014, HOM created and published to the Internet a competing website to sell the Product.

32.     The infringing website is located at www.smallbusinessbodyguardonline.com (the "Infringing Website"), and is an unauthorized, identical copy of the Website.

33.     The Infringing Website attempts to sell the Product, publishes all content now existing on the Website in word-for-word form, and exploits the SBBI intellectual property, including its trademark, copyrights, and brand, in an unauthorized manner without consent from SBBI as required.

34.     The URL of the Infringing Website additionally includes unauthorized use of the SBBI trademark and brand.

35.     On or about August 23, 2014, SBBI responded to HOM's rescission notice, assuring that the June commission payment was soon forthcoming, and requested assurances of HOM's intention to perform its obligations under the Agreement.

36.     On or about August 28, 2014, SBBI made the final installment payment due to HOM.

37.     On or about August 30, 2014, SBBI made the late payment of the June commission, totaling $11,362—this was paid within 30 days.

38.     On or about August 30, 2014, SBBI also made the payment of the July commission, totaling $2,225, due to HOM on that day.

**FIRST CAUSE OF ACTION**

**Breach of Contract**

39.     SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 38 above.

40.     HOM and SBBI entered into an express, written contract as memorialized by the Agreement.

41.     SBBI substantially performed its obligations pursuant to the Agreement.

42.     HOM failed to honor its obligations under the Agreement by repudiating the Agreement, selling the Product from the Infringing Website in competition with SBBI, routing delivery of the product and customer service through its own channels, infringing on SBBI intellectual property, tarnishing the SBBI brand, and failing to participate in negotiation and mediation to resolve disputes.

43.     HOM wrongfully repudiated the Agreement by its unequivocal words and conduct.  Specifically, on August 18, 2014, HOM stated in writing that the Agreement was "null and void," and that it would not honor its obligations under the Agreement.  HOM then engaged in conduct that contravened the express terms of the Agreement, specifically:

    (a)     HOM breached Sections 2.2, 3.1.1 and 11.1 of the Agreement by selling and distributing the Product from the Infringing Website as well as from an additional website located at http://themiddlefingerproject.org/bodyguard.

    (b)     HOM breached Section 3.1.2 and 3.3 of the Agreement by tarnishing the SBBI brand and trademark with a competing website marked with errors, diminishing the standard of quality that SBBI has conveyed to date and causing confusion among SBBI's existing customers as well as potential customers.

7

(c)     HOM breached Section 3.5 of the Agreement by routing delivery of the product and customer service through HOM's own channels.

44.     The foregoing acts and omissions constitute a breach of the Agreement which damaged, and continues to cause damage to SBBI in an amount to be determined at trial, and in no event less than $75,000.00.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

45.     SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 44 above.

46.     HOM unjustly enriched itself at SBBI's expense by benefitting from the continued efforts and services performed by SBBI for the purpose of handling all operations, marketing and sales of the Product on behalf of both SBBI and HOM. In addition, HOM unjustly enriched itself at SBBI's expense by benefitting from over $35,000 in fees paid to HOM by SBBI for all rights, title and ownership interest in the Product and its related assets, which HOM has failed to honor.

47.     HOM unjustly enriched itself at SBBI's expense both on account of sales of SBBI and the diversion of customers to HOM for other product sales and marketing services.

48.     HOM is aware of the benefit conferred upon it by its own acknowledgement. Accordingly, HOM has knowledge that it benefits from its wrongful possession of funds which belong to SBBI.

49.     HOM is wrongfully in possession of funds paid by SBBI to HOM in exchanged for assets that HOM refused to transfer to SBBI, and HOM has received substantial benefits from such wrongful possession.

8

50.    Equity and good conscience require that HOM disgorges these funds to SBBI with interest.

51.    By reason of the foregoing, HOM has unfairly and improperly obtained, and continues to unfairly and improperly obtain, substantial benefits at the expense of SBBI.

52.    HOM has been unjustly enriched by virtue of its improper usurpation of the foregoing-described benefits, and is liable to SBBI in an amount to be determined at trial, and in no event less than $75,000.00.

## THIRD CAUSE OF ACTION
### Copyright Infringement

53.    SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 52 above.

54.    The Product and related written material is copyrightable subject matter under 17 U.S.C. §101 et seq. of the Copyright Act of 1976.

55.    SBBI is the owner of the exclusive rights to the copyrightable material and the privileges in and to the Product.

56.    For each Product work at issue in this matter, SBBI is the author and holds the copyright to the work.

57.    SBBI filed a copyright registration pertaining to the Product. This registration is identified as follows:  Case # 1-969366411 (Filed July 25, 2013).

58.    HOM's Infringing Website reproduces material which originated with or was, in violation of SBBI's rights, copied from SBBI. HOM has used and continues to use the Infringing Website to violate SBBI's exclusive rights to reproduce and sell the Product.

59.    Furthermore, HOM's Infringing Website is substantially similar in look and feel to SBBI's original website at www.smallbusinessbodyguard.com ("SBBI's Website") by

incorporating comprehensively copyright protectable and therefore copyrighted elements of the Product as well as SBBI's Website.

60.    HOM had access to the Product and SBBI's Website by virtue of the joint venture relationship formed between the Parties and later dissolved by the Agreement.

61.    The aforementioned activities of HOM violate the exclusive rights of SBBI under 17 U.S.C. § 101 et seq.

62.    As a direct and proximate result of these acts of copyright infringement by HOM, (1) HOM has been and will continue to be unjustly enriched, both on account of sales of the Product copies and, (2) the diversion of customers to itself for its other products. SBBI has sustained and will continue to sustain irreparable damage and injury to its business in the sale of its Product, goodwill, reputation and profits, in an amount not presently known.

63.    By reason of the acts of HOM herein alleged, SBBI has been damaged and, unless restrained, HOM has and will continue to divert business from SBBI, be unjustly enriched, deceive the public, impair the value of SBBI's products and otherwise will cause SBBI immediate and irreparable harm.

### FOURTH CAUSE OF ACTION

#### Trademark Infringement (Unfair Competition 15 U.S.C. 1125(a))

64.    SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 63 above.

65.    "Small Business Bodyguard," the title of SBBI's Product (the "SBBI Trademark") and the URL of SBBI's Website (www.smallbusinessbodyguard.com) is widely recognized by consumers and has become a valuable indicator of source and origin of SBBI's Product.

66.    HOM's subsequent use in commerce of the alleged SBBI Trademark for HOM's copied products is likely to cause confusion. HOM's infringing acts are intended to divert

business from SBBI as they are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of HOM with SBBI, or as to the origin, sponsorship, or approval of HOM's goods, services, or commercial activities with SBBI in violation of 15 U.S.C. § 1125(a) (§ 43(a) of the Lanham Act).

67.     As a direct and proximate result of HOM's unfair competition with SBBI's common law trademark, HOM has been unjustly enriched and SBBI has suffered and continues to suffer damages and losses to its profits, sales, and business. Such damages are exacerbated by the fact that HOM has advertised and continues to advertise its infringing products in the same channels of distribution as SBBI.

68.     Upon information and belief, HOM's infringement is intentional and malicious and made with the objective of diverting sales from SBBI.  Upon information and belief, HOM's actions also enable HOM to use the goodwill associated with the SBBI Trademark to increase sales of its other products, and is unjustly enriched by such sales of its other products.

69.     By virtue of their joint venture agreement, which was cancelled by the Agreement, HOM had notice of SBBI's ownership in the SBBI Trademark.

### FIFTH CAUSE OF ACTION
#### Cybersquatting (15 U.S.C. 1125(d))

70.     SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 69 above.

71.     Upon information and belief, HOM has a bad faith intent to profit from the registration and use of the Infringing Website (www.smallbusinessbodyguardonline.com) by creating an association with the SBBI Trademark as well as SBBI's Website (www.smallbusinessbodyguard.com) which both preexisted HOM's bad faith use thereof.

72.     The top-level-domain name of the Infringing Website is confusingly similar to, and dilutes the distinctive quality of, the SBBI Trademark and the domain of SBBI's Website.

73.     SBBI has been damaged by HOM's unlawful use of the Infringing Website domain name and will suffer irreparable harm.

74.     HOM's acts, as aforesaid, are in violation of the Anticybersquatting Consumer Protection Act under Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

**SIXTH CAUSE OF ACTION**
**Trademark Dilution**

75.     SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 74 above.

76.     The SBBI Trademark is a famous mark and had become famous prior to HOM's first use of the Infringing Website in conjunction with HOM's products offered to the public as alleged.

77.     The SBBI Trademark is inherently distinctive to the public and the trade with respect to the SBBI Products.

78.     By such wrongly acts, HOM has, and unless restrained by the Court, will continue to cause serious irreparable injury and damage to SBBI and to the goodwill associated with SBBI's famous SBBI Trademark by diluting and blurring its distinctive quality.

79.     HOM's aforementioned acts constitute willful dilution of the SBBI Trademark in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

**SEVENTH CAUSE OF ACTION**
**Common Law Unfair Competition**

80.     SBBI re-alleges and incorporates by reference all of the allegations in paragraphs 1 through 79 above.

12

81.     This is a common law unfair competition claim for damages and injunctive relief.

82.     SBBI is the prior user of the SBBI Trademark at issue.

83.     The SBBI Trademark is inherently distinctive or has acquired secondary meaning.

84.     HOM is using a confusingly similar trademark to identify similar goods marketed by it in competition with SBBI in the same trade area where SBBI has established goodwill.

85.     As a result of HOM's actions, customer confusion is likely as to the source or sponsorship of HOM's products.

86.     SBBI has been damaged by HOM's aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

1.      For a preliminary and permanent injunction restraining HOM, its agents, servants, employees, successors, assigns and those in privity and/or concert with it from (1) copying, distributing, or selling the Product on any competing website, including but not limited to the Infringing Website, or through any other means or channel, and (2) otherwise infringing SBBI's rights in the Product.

2.      That any and all revenue realized by HOM from the Infringing Website and/or sales of the Product or benefit gained by and through exploitation of the SBBI brand be disgorged and transferred to SBBI.

3.      That HOM pay to SBBI, an amount to be determined at trial, but no less than the sum of SBBI's payments to HOM made in accordance with the Agreement, plus foreseeable incidental and consequential damages arising from HOM's breach and violations alleged herein, which represent HOM's unjust enrichment.

4.      That HOM pay to SBBI, an amount to be determined at trial, which represents defendants' unjust enrichment for sales of Product resulting from the fame and goodwill gained by publicly exploiting SBBI's goodwill and reputation in the Product.

5.      That HOM pay to SBBI an amount to be determined at trial, representing punitive damages for HOM's gross and willful disregard of SBBI's intellectual property rights.

6.      That HOM pay to SBBI its reasonable attorneys' fees and the costs of this action.

7.      That this Court compels specific performance of HOM's obligations under the Agreement.

8.      All such other and further relief as the Court deems just and proper.

Dated: New York, New York
       September 5, 2014

THOMPSON BUKHER LLP

By: _____

    Benjamin S. Thompson (BT2176)
    Tim Bukher (TB1984)
    369 Lexington Avenue
    Suite 327
    New York, New York 10017
    Telephone: (212) 920-6050
    Facsimile: (646) 924-3040

    *Attorneys for Plaintiff*