Antigone G. Peyton (*pro hac vice* to be filed)
Kandis M. Koustenis
CLOUDIGY LAW, PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
Tel: (703) 436-2033
Fax: (703) 436-2268
Email: antigone.peyton@cloudigylaw.com
Email: kandis.koustenis@cloudigylaw.com

Norris Wolff
KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue
New York, NY 10176
Tel: (212) 880-9860
Fax: (212) 986-8866
Email: nwolff@kkwc.com

*Attorneys for House of Moxie, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SMALL BUSINESS BODYGUARD, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> HOUSE OF MOXIE, INC., <br><br> *Defendant*. | Civil Action No. 14-CV-7170 <br> Judge Colleen McMahon <br> Magistrate Judge Michael H. Dolinger |

**MEMORANDUM IN SUPPORT OF HOUSE OF MOXIE'S MOTION TO DISMISS**

Defendant House of Moxie, Inc. ("House of Moxie" or "HOM"), by its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Dismiss. Each of the seven counts in Plaintiff Small Business Bodyguard, Inc.'s ("SBBI") Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.

**TABLE OF CONTENTS**

SUMMARY OF THE GROUNDS FOR DISMISSAL ................................................................1

BACKGROUND ..................................................................................................................2

ARGUMENT ........................................................................................................................4

I. BECAUSE SBBI HAS NOT ALLEGED INFRINGEMENT OF A
REGISTERED COPYRIGHT, COUNT THREE MUST BE DISMISSED ....................4

II. BECAUSE SBBI DOES NOT ALLEGE FACTS THAT DEMONSTRATE
"SMALL BUSINESS BODYGUARD" IS A FAMOUS MARK, COUNT SIX
MUST BE DISMISSED ................................................................................................6

III. BECAUSE THE COMPLAINT ALLEGES A FAILED JOINT VENTURE AND
THE PRODUCT ALLEGEDLY SOLD BY HOM IS GENUINE, COUNTS
FOUR AND SEVEN MUST BE DISMISSED ..............................................................8

IV. BECAUSE HOM'S CONDUCT IS NOT COVERED BY THE ANTI-
CYBERSQUATTING ACT, THERE ARE NO FACTUAL ALLEGATIONS TO
SUPPORT A CLAIM OF BAD FAITH, AND HOM IS WITHIN THE
STATUTORY SAFE HARBOR, COUNT FIVE MUST BE DISMISSED ...................10

V. BECAUSE SBBI DOES NOT ALLEGE FACTS SHOWING HOW IT WAS
DAMAGED BY THE ALLEGED BREACH OF CONTRACT, COUNT ONE
MUST BE DISMISSED ..............................................................................................13

VI. BECAUSE SBBI'S UNJUST ENRICHMENT CLAIM IS WHOLLY
DERIVATIVE OF ITS BREACH OF CONTRACT CLAIM, COUNT TWO
MUST BE DISMISSED ..............................................................................................14

CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abelman v. Polinex Plastic Prods. Canada, Ltd.*, No. 92-cv-4112, 1992 WL 212471 (S.D.N.Y.1992) ........................................................................................................... 9

*Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12-cv-1343, 2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ........................................................................................... 5

*Bd. of Trs. of the NJ Carpenters Annuity & Pension Funds v. Bank of NY Mellon*, No. 11-cv-1555, 2011 WL 4916302 (S.D.N.Y. Oct. 13, 2011) ...................................... 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 13

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... 4

*Gioconda Law Group PLLC v. Kenzie*, 941 F. Supp.2d 424 (S.D.N.Y. 2013) ........... 11

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009) ................................................................... 4

*Heller v. Design Within Reach, Inc.*, No. 09-cv-1909, 2009 WL 2486054 (S.D.N.Y. 2009) ................................................................................................................... 6, 7, 8

*IBM v. Dale*, No. 11-cv-951, 2011 WL 4012399 (S.D.N.Y. Sept. 9, 2011) ................ 13

*Kitty Walk Sys., Inc. v. Midnight Pass, Inc.*, 431 F. Supp.2d 306 (E.D.N.Y. 2006) .......... 8, 9, 11

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ............................................ 4

*Krevat v. Burgers to Go, Inc.*, No. 13-cv-6258, 2014 WL 4638844 (E.D.N.Y 2014) ................ 10

*Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806 (6th Cir. 2004) ........... 12

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-cv-2669, 2012 WL 1021535 (S.D.N.Y. Mar. 6, 2012) ............................................................. 6

*Rabin v. MONY Life Ins. Co.*, 387 Fed. Appx. 36 (2d Cir. 2010) ............................... 14

*Scientific Computing Assoc., Inc. v. Warnes*, No. 07-cv-6351, 2011 WL 1327398 (W.D.N.Y. 2011) ........................................................................................................ 9

*Shear Contractors, Inc. v. Shear Enterprises & Gen. Contracting*, No. 09-cv-621, 2010 WL 4781335 (N.D.N.Y. 2010) ................................................................................ 11

*Sussman-Automatic Corp.v. Spa World Corp.*, No. 13-cv-7352, 2014 WL 1651953 (E.D.N.Y. 2014) ......................................................................................................... 9

*Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452 (2d Cir. 1989) ..................... 4

**Statutes**

15 U.S.C. § 1125(a) ...........................................................................................................10

15 U.S.C. § 1125(c)(1) ........................................................................................................7

15 U.S.C. § 1125(c)(2)(A) ..................................................................................................6

15 U.S.C. § 1125(d)(1)(B)(ii) ...........................................................................................11

17 U.S.C. § 411(a) .........................................................................................................4, 6

**Other Authorities**

S. Rep. No. 106–140 (1999), 1999 WL 594571 ..............................................................12

**Rules**

Fed. R. Civ. P. 12(b)(6) .......................................................................................................4

Fed. R. Civ. P. 8 ................................................................................................................14

## SUMMARY OF THE GROUNDS FOR DISMISSAL

First, SBBI does not hold a copyright registration in the allegedly infringed website, www.smallbusinessbodyguard.com. Because federal law requires registration of a copyrighted work before an infringement lawsuit is initiated, SBBI's claim of copyright infringement (Count Three) must be dismissed. Second, SBBI claims trademark dilution under the Trademark Dilution Revision Act, but states no facts to support its conclusory allegation that its alleged trademarks, which are unregistered, are "famous." Dilution claims are only available for marks that are famous as defined by statute; thus, SBBI's claim for trademark dilution (Count Six) must also be dismissed. Third, SBBI's trademark infringement (Count Four) and unfair competition (Count Seven) claims must be dismissed because the product allegedly being sold—an electronic book or "e-book"—is the genuine article and there can be no confusion about its origins. The law is clear that where, as here, the dispute arises from a failed joint venture, no claim of trademark infringement or unfair competition based on the sale of the jointly developed product will lie. Accordingly, Counts Four and Seven must be dismissed. Fourth, SBBI's claim for Cybersquatting (Count Five) also must be dismissed because the statute does not cover the alleged conduct. SBBI does not allege any facts to support a claim of bad faith, and SBBI's allegations make clear that HOM's alleged actions fall within the statutory safe harbor provision. Fifth, SBBI's breach of contract claim (Count One) does not allege any facts supporting its alleged damages attributable to the purported breach of contract. Without factual allegations as to damages, SBBI has not stated a claim for breach of contract and Count One must be dismissed. Finally, SBBI's unjust enrichment claim (Count Two) is wholly duplicative of its breach of contract claim. Because New York law does not allow such duplicative claims, Count Two must also be dismissed.

For these reasons, Defendant House of Moxie respectfully moves for dismissal of SBBI's entire Complaint.

## BACKGROUND

House of Moxie provides the information presented in this background section because it believes that this context will be helpful to the Court. HOM does not rely on the factual background provided here as a basis for dismissal of any claims in the Complaint.

Ashley Ambige, CEO of HOM, has built a company that provides strategic-copywriting advice and brand-development services marketed though a number of websites, blogs, and across social media. HOM also conducts business under "The Middle Finger Project" brand, which projects a message of conducting business differently, with humor and moxie. HOM created several digital books ("e-book") and workshops designed to help small business owners with business, legal, and branding issues that are written in simple, entertaining, and compelling language and tones. One e-book Ms. Ambirge co-authored has become ensnared in a dispute between HOM and one of its joint venture partners that led to this lawsuit. That book is entitled "Small Business Bodyguard."

This saga begins in February of 2013 when Ms. Ambirge, copywriter, business owner, and small business advisor, hired Rachel Rodgers of The Rachel Rodgers Law Office as HOM's lawyer. Just a few months into their lawyer-client relationship, after learning about a successful course HOM developed with a joint venture partner, Ms. Rodgers proposed that she and her client HOM go into business together and write an entertaining e-book that provides legal and business advice for small business owners. And so the joint venture between HOM and Rachel Rodgers Consulting began, with Ms. Ambirge signing a contract that described the terms of the joint venture and both parties' obligations. Ms. Rodgers drafted that contract and Ms. Ambirge

signed it without consulting with another lawyer, after all, her new business partner *was her lawyer* and she trusted her partner.

Approximately 6 months after the Small Business Bodyguard e-book was completed and offered for sale, Ms. Rodgers contacted her client and indicated that she wanted more than the 50% share of profits she was entitled to recover under the joint venture agreement she drafted. Ms. Rodgers wanted to take over Small Business Bodyguard and base her legal career off of the e-book and associated classes that she said only a lawyer could provide.

The parties ultimately signed a new agreement on June 7, 2014 that dissolved the joint venture but allowed HOM to continue to sell the e-book. But Ms. Rodgers did not honor the new agreement. Instead, Ms. Rodgers failed to make the commission payments that HOM was entitled to receive for its sales of the e-book and refused to discuss the disputes Ms. Ambirge raised relating to the new agreement. Ms. Ambirge finally sent a letter to Ms. Rodgers stating that the agreement is rescinded and indicated that, as co-author of the e-book and creator of the name "Small Business Bodyguard," HOM would now continue her efforts to promote and sell the e-book as a common law co-owner, as the parties had agreed in the event the June 7 agreement failed.

In response to this notification, Ms. Rodgers sent several takedown notices under the Digital Millennium Copyright Act to the webhost and other service providers involved in hosting all of Ms. Ambirge's various websites. Ms. Ambirge responded with counter notices under the DMCA that described Ms. Rodgers' improper use of the notice and takedown provisions of the Act. In response, Ms. Rodgers filed this lawsuit under her new corporate name Small Business Bodyguard.

**ARGUMENT**

While this Court must accept the Complaint's allegations as true for the purposes of deciding a motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, this Court can consider the allegations of the Complaint along with documents relied on or incorporated in the Complaint by reference and any additional material that is properly the subject of judicial notice. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). Here, the allegations in the Complaint and the copyright application and agreements referenced in it demonstrate that SBBI's claims cannot withstand scrutiny under Fed. R. Civ. P. 12(b)(6).

**I. BECAUSE SBBI HAS NOT ALLEGED INFRINGEMENT OF A REGISTERED COPYRIGHT, COUNT THREE MUST BE DISMISSED**

SBBI's copyright infringement claim must be dismissed because SBBI has not alleged infringement of (1) a registered copyright, or (2) a copyright that has been refused registration after a proper application with the deposit and registration fee has been delivered to the Copyright Office. The law is clear: "No action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made." 17 U.S.C. § 411(a); *see also Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 453 (2d Cir. 1989) ("proper registration is a prerequisite to an action for infringement"). Where a plaintiff does not have a registration, the "claim is necessarily barred and must be dismissed." *Accurate Grading Quality Assur., Inc. v. Thorpe*, No. 12-cv-1343, 2013 WL 1234836, at *7 (S.D.N.Y.

Mar. 26, 2013) (citing *Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-cv-2669, 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 6, 2012)).

Here, there is no registration covering the copyrighted work that HOM allegedly infringes. SBBI alleges infringement of a website (www.smallbusinessbodyguard.com) and a "Product," which it defines in its Complaint as "products, which offer business formation, development, and protection information, coaching, and advice to entrepreneurs and emerging businesses." *See* Compl. ¶¶ 1, 21-22, 31-33, 58-59. But SBBI makes no allegation that the allegedly infringed website is the subject of a registered copyright. Instead, SBBI merely states that the website content is "copyrightable" or "copyright protectable and therefore copyrighted." *See e.g.*, Compl. ¶¶ 55, 59. SBBI does not allege that it has registered the copyright in its website, because it cannot. Instead, SBBI references Ms. Rodgers' old application for registration of the Product. Compl. ¶ 57.

As for the "Product," SBBI alleges that it filed a "copyright registration" pertaining to the Product, but then it references a *pending copyright application case number*. Compl. ¶57. Such allegations do not satisfy the statutory registration requirement, which is a standing requirement that cannot be waived. *See Accurate Grading*, 2013 WL 1234836 at *7 (dismissing copyright infringement claim where the plaintiff's "phrases are nothing more than self-serving and conclusory statements when they notably stop short of alleging that Plaintiffs had copyright protection or had sought copyright protection and been refused at the time of the complaint").

Setting aside that the Product copyright application is described as something different than the website located at www.smallbusinessbodyguard.com or its content, the referenced application is just that, an application. This application was, as SBBI alleges, filed in July of 2013, Compl. ¶ 57, on behalf of Rachel Rodgers Consulting and HOM. To date, it has not been

approved or refused by the Copyright Office, but was purposefully "suspended" by SBBI during the parties' negotiation of a new agreement covering their rights and responsibilities involving the e-book. An application not acted on by the office and purposefully suspended by the applicant does not satisfy the registration requirement in 17 U.S.C. § 411(a). *See Muench Photography, Inc. v. Houghton Mifflin Harcourt Pub. Co.*, No. 09-cv-2669, 2012 WL 1021535, at *2 (S.D.N.Y. Mar. 6, 2012) ("Courts in this Circuit require that a plaintiff either hold a valid copyright registration or have applied and been refused a registration as a prerequisite to filing a civil claim."). Because SBBI has not registered its copyright in the allegedly infringed website or the Product, Count Three must be dismissed.

## II.  BECAUSE SBBI DOES NOT ALLEGE FACTS THAT DEMONSTRATE "SMALL BUSINESS BODYGUARD" IS A FAMOUS MARK, COUNT SIX MUST BE DISMISSED

SBBI does not hold a famous mark and fails to allege facts that, if taken as true, would be evidence of fame to support a trademark dilution claim.

Blurring and tarnishment are the two recognized types of trademark dilution claims that are only available to owners of famous trademarks. Famous marks are those that enjoy a high degree of consumer recognition, but few trademarks enjoy the status of "fame." For a mark to be considered "famous" and subject to protection against trademark dilution, it must be "widely recognized by the general consuming public of the United States" as a designation indicating a single source of goods or services. 15 U.S.C. § 1125(c)(2)(A). Viable dilution claims relate to truly famous marks, not to those known only in a niche market. *See Heller v. Design Within Reach, Inc.*, No. 09-cv-1909, 2009 WL 2486054, at *4 (S.D.N.Y. 2009) (citing *Dan–Foam A/S v. Brand Named Beds, LLC*, 500 F.Supp.2d 296, 307 n.90 (S.D.N.Y. 2007)). The "Small

Business Bodyguard" mark does not satisfy this standard. Rather, "Small Business Bodyguard" is, by definition, aimed at a niche market—small business owners and entrepreneurs.

Courts use the following factors are used to identify famous marks: (1) the "duration, extent, and geographic reach of advertising and publicity of the mark," (2) the "amount, volume, and geographic extent of sales of goods and services offered under the mark," (3) the "extent of actual recognition of the mark," and (4) whether "the mark was registered." 15 U.S.C. § 1125(c)(1). Indeed, "courts generally have limited famous marks to those that receive multi-million dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *Heller*, 2009 WL 2486054, at *3. Thus, to survive a motion to dismiss, a trademark dilution plaintiff "must plead enough facts to show that its dilution claim is facially plausible." *Heller*, 2009 WL 2486054, at *4 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

SBBI fails to plead facts relevant to any of these fame factors, and it doesn't even have a registered trademark. In addition, other allegations in the Complaint demonstrate that the "Small Business Bodyguard" e-book does not yield millions of dollars in revenue. *See* Compl. ¶¶ 37-38 (noting commissions of $11,362 and $2,225 for book sales during a two-month period). SBBI cannot invoke the protection of the Trademark Dilution Revision Act (TDRA)[1] in this case—it lacks a facially plausible claim.

---

[1] The Act provides:
> *the owner of a famous mark* that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's *mark has become famous*, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment *of the famous mark* . . . .

15 U.S.C. § 1125(c)(1) (emphasis added).

The *Heller* case is instructive here. In *Heller*, the court granted the defendant's motion to dismiss a trademark dilution claim involving a contemporary chair. In that case, the plaintiff only alleged that the mark was known in the niche market of contemporary furniture and "failed to include any other factual allegations that would make a claim of 'fame' plausible…." such as "information about the chair's advertising budget or the strength of its consumer recognition in the general population." *Heller*, 2009 WL 2486054, at *4.

Here, as in *Heller*, SBBI's Complaint does not plead facts that support a finding that its alleged mark is famous. SBBI does not set forth facts relating to any of the factors listed in the dilution statute and only provides a conclusory allegation that its alleged unregistered mark is famous. Compl. ¶¶ 76-78. Indeed, the Complaint lacks any factual allegations that might make the claim to a famous mark plausible. As in *Heller*, SBBI simply cannot allege facts which evidence that its mark is on par with "Dupont, Buick, or Kodak" as required by the TDRA. Accordingly, Count Six should be dismissed.

### III. BECAUSE THE COMPLAINT ALLEGES A FAILED JOINT VENTURE AND THE PRODUCT ALLEGEDLY SOLD BY HOM IS GENUINE, COUNTS FOUR AND SEVEN MUST BE DISMISSED

SBBI's common law and statutory unfair competition claims relate to the fruits of a failed joint venture relationship, and it attempts to use these claims to prevent its former joint venture partner from selling a jointly-created product. But where the goods sold "are precisely what they purport to be" and "the only question is which party has the right to sell" the product and collect profit, a plaintiff cannot state a trademark infringement claim or unfair competition claim. *Kitty Walk Sys., Inc. v. Midnight Pass, Inc.*, 431 F. Supp.2d 306, 310 (E.D.N.Y. 2006).

In *Kitty Walk*, the court granted the defendant's motion to dismiss a trademark infringement claim. The parties developed a product as part of a joint venture and both sold the

product via websites. When the joint venture soured, Kitty Walk sued, claiming that Midnight Pass was infringing its trademark by continuing to market and sell the product.

The court noted that there was no question that the product sold was the genuine product developed by the joint venture. Because the product was genuine, the *Kitty Walk* court reasoned, there could be no consumer confusion, because this requires that consumers be confused or misled as to the source of the goods and purchase under the mistaken belief that the goods are those of a competitor. In other words, "no confusion as to source of goods could exist where the goods are genuine and the parties 'are fractured parts of the same enterprise, and the product at issue is the fruit of that enterprise....'" *Id*. (citing *Christopher Norman Chocolates, Ltd. v. Schokinag Chocolates N. Am., Inc.*, 270 F. Supp.2d 432, 436 (S.D.N.Y.2003)); *Abelman v. Polinex Plastic Prods. Canada, Ltd.*, No. 92-cv-4112, 1992 WL 212471, at *3 (S.D.N.Y.1992). "Under these circumstances, no claim for trademark or copyright infringement or unfair competition will lie." *Kitty Walk,* 431 F. Supp.2d at 310. *See also*, *Scientific Computing Assoc., Inc. v. Warnes*, No. 07-cv-6351, 2011 WL 1327398 (W.D.N.Y. 2011) (dismissing unfair competition claim where defendant was former joint venture partner selling the joint venture product).

The elements of unfair competition under New York law "closely parallel the elements of unfair competition under the Lanham Act, except that a plaintiff must show 'either actual confusion or a likelihood of confusion, and there must be some showing of bad faith on the part of the defendants.'" *Sussman-Automatic Corp.v. Spa World Corp.*, No. 13-cv-7352, 2014 WL 1651953, at *12 (E.D.N.Y. 2014) Accordingly, a plaintiff asserting a common law unfair competition based on trademark infringement "must show that the defendants use of the trademark is likely to cause confusion about the source of the allegedly infringing product and

that the defendant acted in bad faith." *Krevat v. Burgers to Go, Inc.*, No. 13-cv-6258, 2014 WL 4638844, at *11 (E.D.N.Y 2014). Accordingly, as with the trademark infringement claim, where the goods are the genuine product of a joint venture, there can be no consumer confusion.

The facts underlying the unfair competition claims here are strikingly similar to *Kitty Walk*. Here, SBBI alleges trademark infringement under 15 U.S.C. § 1125(a) and unfair competition based on the alleged trademark infringement. Compl. ¶¶ 66, 80-85. The Complaint states that the e-book "Small Business Bodyguard" was the product of a joint venture between the parties and that both parties marketed and sold the e-book using the "Small Business Bodyguard" name. *See* Compl. ¶¶ 8-9, 11. In other words, its source and origin is the joint authors identified on the e-book and the joint venture.

The Complaint makes no effort to allege any facts relating to actual or potential consumer confusion, it merely lists conclusory allegations of confusion that are not sufficient to state a claim. As in *Kitty Walk*, HOM's alleged continued sale of the genuine e-book product cannot possibly lead to confusion as to source or origin of the e-book. Here, the e-book is precisely what it purports to be, and "the only question is which party has the right to sell products and the apportionment of any profit" now that the business relationship between the parties has soured. Accordingly, Counts Four and Seven must be dismissed.

### IV. BECAUSE HOM'S CONDUCT IS NOT COVERED BY THE ANTI-CYBERSQUATTING ACT, THERE ARE NO FACTUAL ALLEGATIONS TO SUPPORT A CLAIM OF BAD FAITH, AND HOM IS WITHIN THE STATUTORY SAFE HARBOR, COUNT FIVE MUST BE DISMISSED

SBBI's reliance on the Anti-cybersquatting Consumer Protection Act ("ACPA") is misplaced and the Complaint allegations do not support a claim for relief under this Act. To state a viable claim under the ACPA, SBBI must show "(1) that the defendant's domain is either (a)

dilutive of a famous mark or (b) identical or confusingly similar to a distinctive trademark; and (2) that the defendant has 'a bad faith intent to profit from that mark.'" *Kitty Walk*, 431 F. Supp.2d at 310. The ACPA also lists nine factors for consideration in determining bad faith. *Shear Contractors, Inc. v. Shear Enterprises & Gen. Contracting*, No. 09-cv-621, 2010 WL 4781335, at *7 (N.D.N.Y. 2010).

As discussed in Section II above, SBBI has not pled facts that support a trademark dilution claim involving a famous mark. Thus, to maintain its cybersquatting claim, SBBI must allege facts showing that HOM had bad faith intent to profit from the Small Business Bodyguard mark. But there can be no bad faith finding if HOM "believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. § 1125(d)(1)(B)(ii) (the safe harbor provision). The ACPA "is not an all-purpose tool" but instead was created to curtail the act of registering someone else's name as a domain for the purpose of demanding remuneration from the person in exchange for the transfer of the domain name. *Gioconda Law Group PLLC v. Kenzie*, 941 F. Supp.2d 424, 437 (S.D.N.Y. 2013) (citations and quotations omitted). As is the case with trademark infringement and unfair competition, where "the goods offered for sale are legitimate goods" that are the fruit of a joint venture, there can be no claim of cybersquatting. *Kitty Walk*, 431 F. Supp.2d at 310 (dismissing cybersquatting claim based on former joint venture partner's continued online sales).

Here, there is no allegation that HOM has registered any domain name with the purpose of demanding payments from SBBI to transfer a domain or for the purpose of causing consumer confusion in the way described in the Act. Nor is there any allegation HOM has amassed a variety of domain names or provided false information when registering any domain. The conduct complained of here is simply not the conduct that Congress targeted with the ACPA and

the claim should be dismissed. *See e.g.*, *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004) (concluding that dismissal is proper where "[t]he paradigmatic harm that the ACPA was enacted to eradicate—the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark—is simply not present in any of [Defendant's] actions."); *see also*, S. Rep. No. 106–140 (1999), 1999 WL 594571, at *5–6 (describing cybersquatters as those who intend to extract payments from the owner or the highest bidder and those who intend to prey on or defraud consumers by engaging in counterfeiting activity).

Even if HOM's actions could be considered covered by the ACPA, SBBI's claim would still fail under Rule 12(b)(6). The Complaint lacks any facts to support SBBI's claim that the alleged mark is distinctive and alleges no facts that could support a finding of the key element of bad faith. Rather, HOM was the joint creator of the "Small Business Bodyguard" e-book and jointly marketed and sold the e-book, which involved HOM's use of "Small Business Bodyguard." Compl. ¶¶ 8-9, 11. Moreover, a provision in the June 7, 2014 agreement stated that, in the event that Agreement failed, the parties would operate under common law intellectual property rights. Compl. ¶¶ 19-20. That provision, along with HOM's status as joint author of the e-book, form HOM's reasonable grounds to believe that its use of the "Small Business Bodyguard" name and sale of the work it jointly created was and is lawful. In other words the allegations in the Complaint not only fail to state an ACPA claim, but they make clear that HOM falls well within the safe harbor of Section 1125(d)(1)(B)(ii). Accordingly, Count Five must be dismissed.

## V. BECAUSE SBBI DOES NOT ALLEGE FACTS SHOWING HOW IT WAS DAMAGED BY THE ALLEGED BREACH OF CONTRACT, COUNT ONE MUST BE DISMISSED

SBBI's claim of breach of contract should be dismissed because SBBI has not and cannot sufficiently allege that it sustained any damages as a result of the alleged breach. Once again, SBBI's allegations are simply conclusory and cannot satisfy the well-plead complaint standard. SBBI must specifically allege damages attributable to a purported breach in order to sustain a breach of contract action. *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that a complaint "requires more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and does not suffice "if it tenders naked assertions devoid of further factual enhancement"); *Bd. of Trs. of the NJ Carpenters Annuity & Pension Funds v. Bank of NY Mellon*, No. 11-cv-1555, 2011 WL 4916302, at *5 (S.D.N.Y. Oct. 13, 2011) (granting the defendants' motion to dismiss because the complaint failed to sufficiently allege damages attributable to the claimed breach). A complaint that simply alleges damages without providing "particular facts as to how [the party] was damaged does not satisfy [federal pleading standards]." *IBM v. Dale*, No. 11-cv-951, 2011 WL 4012399 at *2 (S.D.N.Y. Sept. 9, 2011) (dismissing claim for damages where a party simply noted that it had "suffered damages" without showing how and in what way the damages were sustained).

Here as in *IBM*, the Complaint simply alleges that the alleged breach "damaged and continues to cause damage to" SBBI, with no information about how SBBI has been actually damaged and no facts supporting such a claim. Compl. ¶ 44. While SBBI claims that such damages are "no event less than $75,000", *id.*, it provides no factual allegations that would support such a damages allegation of this magnitude. SBBI cannot simply claim to have been damaged as a result of the alleged breach without making any allegation as to particular facts that

demonstrate damage occurred and the basis for the $75,000+ damages allegation. For that reason, Count One must be dismissed.

## VI. BECAUSE SBBI'S UNJUST ENRICHMENT CLAIM IS WHOLLY DERIVATIVE OF ITS BREACH OF CONTRACT CLAIM, COUNT TWO MUST BE DISMISSED

Finally, SBBI's unjust enrichment claim appears to be entirely duplicative of its breach of contract claim and should be dismissed on this basis. Under New York law, a party cannot allege both breach of contract and unjust enrichment where the claims are duplicative. *See Rabin v. MONY Life Ins. Co.*, 387 Fed. Appx. 36, 42 (2d Cir. 2010). Where, as here, a plaintiff's underlying allegations are the same for both, there can be "no cognizable claim for unjust enrichment separate from [the] breach of contract claim." *Id*.

A party has the right to plead in the alternative causes of action that may be inconsistent with each other, including unjust enrichment and breach of contract. *See* Fed. R. Civ. P. 8. But here, SBBI does not appear to plead in the alternative. Instead, in support of its unjust enrichment claims, SBBI realleges the facts supporting the breach of contract claim and specifically alleges that the unjust enrichment claim is based on the allegation that HOM "failed to honor" the contract. Compl. ¶46. In other words, the unjust enrichment claim is not based on a quasi-contract theory that is an alternative theory in the event the Court holds the June 7, 2014 contract invalid. Instead, the unjust enrichment claim appears to be wholly dependent on the existence and breach of the contract.

Because the breach of contract and unjust enrichment claims are duplicative and not pled in the alternative, Count Two must be dismissed or at the very least, SBBI should be required to amend the Complaint to clarify the alternative nature of this unjust enrichment claim.

## CONCLUSION

For the reasons set forth above, each and every cause of action alleged in SBBI's Complaint should be dismissed. Or, alternatively, with respect to the unjust enrichment claim in Count Two, SBBI should be required to amend its Complaint to set out with greater specificity and clarity the nature of these claims and their independence from the breach of contract claims.

Respectfully submitted,

Date: September 30, 2014

/s/ *Kandis M. Koustenis*
Antigone G. Peyton (*pro hac vice* to be filed)
Kandis M. Koustenis
CLOUDIGY LAW PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
Tel: (703) 436-2033
Fax: (703) 436-2268
Email: antigone.peyton@cloudigylaw.com
Email: kandis.koustenis@cloudigylaw.com

Norris Wolff
KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue
New York, NY 10176
Tel: (212) 880-9860
Fax: (212) 986-8866
Email: nwolff@kkwc.com

*Attorneys for House of Moxie, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to counsel for the parties. Service copies were also provided via email to counsel for Plaintiff:

    Benjamin S. Thompson
    THOMPSON BUKHER LLP
    369 Lexington Avenue, Suite 327
    New York, NY 10017
    Email: bthompson@thomplegal.com

                                      /s/ *Kandis M. Koustenis*