Antigone G. Peyton (*pro hac vice* to be filed)
Kandis M. Koustenis
CLOUDIGY LAW PLLC
8300 Greensboro Drive, Suite 1250
McLean, VA 22102
Tel: (703) 436-2033
Fax: (703) 436-2268
Email: antigone.peyton@cloudigylaw.com
Email: kandis.koustenis@cloudigylaw.com

Norris Wolff
KLEINBERG, KAPLAN, WOLFF, COHEN, P.C.
551 Fifth Avenue
New York, NY 10176
Tel: (212) 880-9860
Fax: (212) 986-8866
Email: nwolff@kkwc.com

*Attorneys for House of Moxie, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SMALL BUSINESS BODYGUARD, INC.,

*Plaintiff/Counterclaim-Defendant,*

- against -

HOUSE OF MOXIE, INC.,

*Defendant/Counterclaim-Plaintiff,*

- against -

RACHEL RODGERS LAW OFFICE, PC
and RACHEL RODGERS,

*Counterclaim-Defendants.*

Civil Action No. 14 CV 7170 (CM) (MHD)

**HOUSE OF MOXIE, INC.'S ANSWER
WITH COUNTERCLAIMS**

<u>**HOUSE OF MOXIE'S ANSWER**</u>

Defendant House of Moxie, Inc. ("HOM"), by and through its undersigned counsel, as and for its Answer to the Complaint filed by Small Business Bodyguard, Inc. ("SBBI") on September 5, 2014 (the "Complaint"), alleges upon knowledge as to itself and otherwise upon information and belief, in response to the numbered allegations of the Complaint as follows:

1.      HOM denies the allegations of Paragraph 1, except to admit that on June 7, 2014 HOM signed an agreement entitled "Joint Venture Dissolution Agreement." (*See* Ex. 1, Joint Venture Dissolution Agreement.) Paragraph 1 also states SBBI's definition of its term "Product," to which no responsive pleading is required. HOM further states that Paragraph 1 pleads legal conclusions relating to the transfer of certain rights under that agreement to which no responsive pleading is required.

2.      HOM denies the allegations of Paragraph 2, except to admit that the Complaint purports to allege a claim arising under the copyright and trademark laws of the United States and, as such, this Court has original subject matter jurisdiction. HOM further states that Paragraph 2 pleads legal conclusions to which no responsive pleading is required.

3.      HOM denies the allegations of Paragraph 3, except to admit that the Complaint purports to allege a claim arising under New York law.

4.      HOM denies the allegations of Paragraph 4. Paragraph 7.1 of the Joint Venture Dissolution Agreement is a choice of law clause only; it provides no consent to jurisdiction in this district or anywhere else. Moreover, HOM neither conducts regular business in this district nor did it undertake the activities alleged to give rise to SBBI's copyright, trademark, and breach of contract claims in this district. On information and belief, SBBI also did not undertake any of the activities that give rise to this dispute in this district.

5.      HOM denies the allegations of Paragraph 5. SBBI alleges that it is a corporation organized and existing under the laws of New Jersey and maintains its principal place of business in New Jersey. HOM is a Delaware corporation with its principal place of business in Delaware. This action should have been brought in another district in which a substantial part of the events giving rise to SBBI's claims occurred or a district in which HOM or SBBI resides.

6.      HOM lacks sufficient information to admit or deny the allegations of Paragraph 6 and they are, therefore, denied.

7.      HOM denies the allegations of Paragraph 7, except to admit that it is a Delaware corporation with a registered mailing address at 427 N. Tatnall Street, No. 54602, Wilmington, DE 19801.

8.      HOM denies the allegations of Paragraph 8, except to admit that HOM entered into an agreement dated May 5, 2013 with Rachel Rodgers Consulting, LLC ("RRC") entitled "Small Business Bodyguard Joint Venture Agreement" ("JV Agreement"). (*See* Ex. 2, JV Agreement.)

9.      HOM denies the allegations of Paragraph 9, except to admit that under the terms of the JV Agreement, RRC was responsible for the administrative duties for the joint venture. (*See* Ex. 2, JV Agreement ¶ 3.1.) HOM further states that RRC's duties to the joint venture are described in Paragraph 5.1 of the JV Agreement, and HOM's duties are similarly described in Paragraph 6.1 of the JV Agreement. (*See* Ex. 2, JV Agreement ¶¶ 5.1, 6.1.)

10.     HOM denies the allegations of Paragraph 10.

11.     HOM denies the allegations of Paragraph 11, except to admit that HOM edited the entire e-book entitled "Small Business Bodyguard" ("SBB e-book") and created almost all of the content used to market and promote the SBB e-book. HOM further states that its duties to the

joint venture are described in Paragraph 6.1 of the JV Agreement. (*See* Ex. 2, JV Agreement ¶ 6.1.)

12.    HOM denies the allegations of Paragraph 12.

13.    HOM denies the allegations of Paragraph 13.

14.    HOM denies the allegations of Paragraph 14, except to admit that in or around late December 2013/January 2014, Rachel Rodgers initiated discussions with HOM regarding Rachel Rodgers's desire to modify the JV Agreement.

15.    HOM denies the allegations of Paragraph 15, except to admit that in or around May 2014, the parties agreed in principle to terminate the JV Agreement, which was subsequently formally terminated by execution of the Joint Venture Dissolution Agreement ("JV Dissolution Agreement").

16.    HOM admits the allegations of Paragraph 16.

17.    HOM denies the allegations of Paragraph 17, except to admit that under the JV Dissolution Agreement, HOM agreed, subject to the timely receipt of certain funds from RRC, to transfer its rights, title and ownership interest in the intellectual property (and related business assets and goodwill) owned by HOM by virtue of the JV Agreement. (*See* Ex. 1, JV Dissolution Agreement ¶¶ 2.1 and 2.2.)

18.    HOM denies the allegations of Paragraph 18, except to admit that part of the consideration to HOM under the JV Dissolution Agreement was comprised of three installment payments of $5,000 to be paid by RRC on June 30, July 30, and August 30, 2014. (*See* Ex. 1, JV Dissolution Agreement ¶ 2.1.)

19.    HOM admits the allegations of Paragraph 19.

20.    HOM admits the allegations of Paragraph 20.

21.     HOM denies the allegations of Paragraph 21, except to admit that part of the consideration to HOM was comprised of monthly payments of commissions earned by HOM's sales, as defined by the JV Dissolution Agreement. (*See* Ex. 1, JV Dissolution Agreement ¶¶ 2.4, 3.6, 3.7, and 3.10.)

22.     HOM denies the allegations of Paragraph 22, except to admit that the Website located at http://www.smallbusinessbodyguard.com is one of the assets that HOM agreed to transfer (and did transfer) to RRC under the JV Dissolution Agreement, so long as RRC met its own obligations under that agreement. (*See* Ex. 1, JV Dissolution Agreement, ¶¶ 2.1–2.3.)

23.     HOM denies the allegations of Paragraph 23, except to admit that, after several unsuccessful attempts by Ashley Ambirge and HOM's counsel to reach Rachel Rodgers by phone over several preceding days, HOM sent an e-mail on June 20, 2014, which, among other things, pointed out an error in the calculation of commissions owed to HOM under the JV Dissolution Agreement and asked RRC to correct the error, or contact HOM's legal counsel to discuss the issue.

24.     HOM denies the allegations of Paragraph 24, except to admit that HOM's June 20, 2014 correspondence about the commissions error included a request for the information RRC was required to provide under the JV Dissolution Agreement, namely: "a verifiable description of the referral partner settings (or other mechanism(s), as the case may be) used by RRC to track HOM Sales and to ensure accurate Commission payments for each and every HOM Sale." (*See* Ex. 1, JV Dissolution Agreement, ¶ 3.6.)

25.     HOM denies the allegations of Paragraph 25, except to admit that on June 19, 2014, Ashley Ambirge, co-author of the SBB e-book, sent an email to her audience that, in

addition to promoting the SBB e-book, announced the change in her connection with Small Business Bodyguard. (*See* Ex. 3, June 19, 2014 Announcement Email.)

26.   HOM denies the allegations of Paragraph 26, except to admit that, having received no response to its June 20, 2014 inquiry, HOM's legal counsel sent an email to Ms. Rodgers and her counsel to follow up, stating "Please let me know when we can schedule a time to discuss." (*See* Ex. 4, July 2, 2014 Email Thread.)

27.   HOM denies the allegations of Paragraph 27, except to admit that RRC's legal counsel responded on July 2, 2014 by stating that she would "talk to Rachel and get back to you at the earliest." (*See* Ex. 4, July 2, 2014 Email Thread.) Later, Ms. Rodgers responded by stating that "[f]inance charges on payment plans are not a part of the Gross Sales Price." (*See* Ex. 24, July 2-3 Email Thread.) HOM further admits that, after continuing to receive customer complaints that purchases attempted through HOM's affiliate link were not going through, and still unsure whether or how RRC was ensuring accurate commission payment for HOM's sales, (*see* Ex. 1, JV Dissolution Agreement, ¶ 3.6), on July 7, 2014 HOM's counsel purchased the SBB e-book through HOM's affiliate link in an effort to ensure the link was working properly.

28.   HOM denies the allegations of Paragraph 28, except to admit that on July 9, 2014, HOM sent RRC a formal notice of dispute under Section 7 of the JV Dissolution Agreement. (*See* Ex. 5, July 9, 2014 Dispute Letter; Ex. 1, JV Dissolution Agreement, ¶ 7.2.)

29.   HOM denies the allegations of Paragraph 29, except to admit that on July 28, 2014, RRC's counsel informed HOM that "the affiliate commission for Ash's affiliate sales of SBB during the month of June will not be paid by the end of the month" as required under the JV Dissolution Agreement. (*See* Ex. 6, July 28, 2014 Ragavanis Email.)

30.     HOM denies the allegations of Paragraph 30, except to admit that on August 18, 2014, after HOM's efforts to engage in the contractual dispute resolution process failed, HOM sent RRC a letter rescinding the JV Dissolution Agreement. (*See* Ex. 7, August 18, 2014 Rescission Letter.)

31.     HOM denies the allegations of Paragraph 31, except to admit that on August 18, 2014, HOM published a website on the Internet relating to the SBB e-book.

32.     HOM denies the allegations of Paragraph 32, except to admit that the website HOM set up was located at http://www.smallbusinessbodyguardonline.com.

33.     HOM denies the allegations of Paragraph 33.

34.     HOM denies the allegations of Paragraph 34.

35.     HOM denies the allegations of Paragraph 35, except to admit that by email dated August 23, 2014 and confirmation letter dated August 25, 2014, RRC responded to HOM's dispute letter and rescission notice by demanding that HOM reaffirm the JV Dissolution Agreement by August 27, 2014. (*See* Ex. 8, August 25, 2014 Ragavanis Letter.) HOM expressly denies the allegations set forth in this letter and further notes that it contains factual inaccuracies.

36.     HOM denies the allegations of Paragraph 36, except to admit that 12 days after receiving notice that the JV Dissolution Agreement was rescinded, RRC sent a $5,000 installment payment to HOM.

37.     HOM denies the allegations of Paragraph 37, except to admit that 12 days after receiving notice that the JV Dissolution Agreement was rescinded, and two months after the June commissions would have been due, RRC made a payment that it represented as the amount due to HOM for June commissions.

38.     HOM denies the allegations of Paragraph 38, except to admit that 12 days after receiving notice that the JV Dissolution Agreement was rescinded, RRC made a payment that it represented as the amount due to HOM for July commissions.

39.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 38 above.

40.     HOM denies the allegations of Paragraph 40, except to admit that RRC and HOM entered into two written agreements relating to the SBB e-book and related activities.

41.     HOM denies the allegations of Paragraph 41. HOM further states that Paragraph 41 pleads conclusions of law to which no responsive pleading is required.

42.     HOM denies the allegations of Paragraph 42. HOM further states that Paragraph 42 pleads conclusions of law to which no responsive pleading is required.

43.     HOM denies the allegations of Paragraph 43, except to admit that on August 18, 2014, HOM sent a letter notifying RRC that HOM considered the JV Dissolution Agreement rescinded, null, and void due to RRC's serial and material breaches of its terms. HOM further states that Paragraph 43 pleads conclusions of law to which no responsive pleading is required.

44.     HOM denies the allegations of Paragraph 44. HOM further states that Paragraph 44 pleads conclusions of law to which no responsive pleading is required.

45.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 44 above.

46.     HOM denies the allegations of Paragraph 46. HOM further states that Paragraph 46 pleads conclusions of law to which no responsive pleading is required.

47.     HOM denies the allegations of Paragraph 47. HOM further states that Paragraph 47 pleads conclusions of law to which no responsive pleading is required.

48.     HOM denies the allegations of Paragraph 48.

49.     HOM denies the allegations of Paragraph 49. HOM further states that Paragraph 49 pleads conclusions of law to which no responsive pleading is required.

50.     HOM denies the allegations of Paragraph 50. HOM further states that Paragraph 50 pleads conclusions of law to which no responsive pleading is required.

51.     HOM denies the allegations of Paragraph 51. HOM further states that Paragraph 51 pleads conclusions of law to which no responsive pleading is required.

52.     HOM denies the allegations of Paragraph 52. HOM further states that Paragraph 52 pleads conclusions of law to which no responsive pleading is required.

53.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 52 above.

54.     HOM denies the allegations of Paragraph 54. HOM further states that Paragraph 54 pleads conclusions of law to which no responsive pleading is required.

55.     HOM denies the allegations of Paragraph 55. HOM further states that Paragraph 55 pleads conclusions of law to which no responsive pleading is required.

56.     HOM denies the allegations of Paragraph 56, except to admit that RRC is a co-author of the SBB e-book and HOM is the other co-author. HOM further states that Paragraph 55 pleads conclusions of law to which no responsive pleading is required.

57.     HOM denies the allegations of Paragraph 56, except to admit that on information and belief, Ms. Rodgers, in her capacity as a lawyer, filed with the Copyright Office an application for registration of an unknown work titled "Small Business Bodyguard" and "Small Business Bodyguard Radio." On information and belief, this copyright application contained errors, was fatally defective, and has not been approved (or refused) by the Copyright Office.

Thus, the unknown work that relates to Case No. 1-969366411 (filed July 25, 2013) is not registered.

58.     HOM denies the allegations of Paragraph 58. HOM further states that Paragraph 58 pleads conclusions of law to which no responsive pleading is required.

59.     HOM denies the allegations of Paragraph 59. HOM further states that Paragraph 59 pleads conclusions of law to which no responsive pleading is required.

60.     HOM denies the allegations of Paragraph 60, except to admit that it created copyrightable works relating to the joint venture relationship with RRC, which include the SBB e-book and content that is available at the URL http://www.smallbusinessbodyguard.com.

61.     HOM denies the allegations of Paragraph 61. HOM further states that Paragraph 61 pleads conclusions of law to which no responsive pleading is required.

62.     HOM denies the allegations of Paragraph 62. HOM further states that Paragraph 62 pleads conclusions of law to which no responsive pleading is required.

63.     HOM denies the allegations of Paragraph 63. HOM further states that Paragraph 63 pleads conclusions of law to which no responsive pleading is required.

64.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 63 above.

65.     HOM denies the allegations of Paragraph 65. HOM further states that Paragraph 65 pleads conclusions of law to which no responsive pleading is required.

66.     HOM denies the allegations of Paragraph 66. HOM further states that Paragraph 66 pleads conclusions of law to which no responsive pleading is required.

67.     HOM denies the allegations of Paragraph 67. HOM further states that Paragraph 67 pleads conclusions of law to which no responsive pleading is required.

68.     HOM denies the allegations of Paragraph 68. HOM further states that Paragraph 68 pleads conclusions of law to which no responsive pleading is required.

69.     HOM denies the allegations of Paragraph 69, except to admit that that RRC and HOM entered into two written agreements relating to the SBB e-book and activities associated with the SBB e-book. (*See* Ex. 2, JV Agreement; Ex. 1, JV Dissolution Agreement.)

70.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 69 above.

71.     HOM denies the allegations of Paragraph 71. HOM further states that Paragraph 71 pleads conclusions of law to which no responsive pleading is required.

72.     HOM denies the allegations of Paragraph 72. HOM further states that Paragraph 72 pleads conclusions of law to which no responsive pleading is required.

73.     HOM denies the allegations of Paragraph 73. HOM further states that Paragraph 73 pleads conclusions of law to which no responsive pleading is required.

74.     HOM denies the allegations of Paragraph 74. HOM further states that Paragraph 74 pleads conclusions of law to which no responsive pleading is required.

75.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 74 above.

76.     HOM denies the allegations of Paragraph 76. HOM further states that Paragraph 76 pleads conclusions of law to which no responsive pleading is required.

77.     HOM denies the allegations of Paragraph 77. HOM further states that Paragraph 77 pleads conclusions of law to which no responsive pleading is required.

78.     HOM denies the allegations of Paragraph 78. HOM further states that Paragraph 78 pleads conclusions of law to which no responsive pleading is required.

79.     HOM denies the allegations of Paragraph 79. HOM further states that Paragraph 79 pleads conclusions of law to which no responsive pleading is required.

80.     HOM restates and incorporates by reference its responses to Paragraphs 1 to 79 above.

81.     HOM denies the allegations of Paragraph 81, except to admit that The Seventh Cause of Action purports to allege a common law unfair competition claim.

82.     HOM denies the allegations of Paragraph 82. HOM further states that Paragraph 82 pleads conclusions of law to which no responsive pleading is required.

83.     HOM denies the allegations of Paragraph 83. HOM further states that Paragraph 83 pleads conclusions of law to which no responsive pleading is required.

84.     HOM denies the allegations of Paragraph 84. HOM further states that Paragraph 84 pleads conclusions of law to which no responsive pleading is required.

85.     HOM denies the allegations of Paragraph 85. HOM further states that Paragraph 85 pleads conclusions of law to which no responsive pleading is required.

86.     HOM denies the allegations of Paragraph 86.

## AFFIRMATIVE DEFENSES

87.     HOM restates and incorporates by reference its above responses to Paragraphs 1 through 86 of the Complaint.

### FIRST AFFIRMATIVE DEFENSE

88.     SBBI fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

89.     SBBI's claims are barred in whole or in part by the doctrine of equitable estoppel.

## THIRD AFFIRMATIVE DEFENSE

90.     SBBI's claims are barred in whole or in part by the doctrine of unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

91.     The JV Dissolution Agreement is unenforceable due to SBBI's

misrepresentations, which include fraud and deceitful conduct relating to the formation,

execution, and its performance (as RRC) under that agreement.

## FIFTH AFFIRMATIVE DEFENSE

92.     HOM does not and has not infringed any valid and enforceable copyright of

SBBI, either directly or indirectly.

## SIXTH AFFIRMATIVE DEFENSE

93.     HOM does not and has not infringed any valid and enforceable trademark for

"Small Business Bodyguard," either directly or indirectly.

## SEVENTH AFFIRMATIVE DEFENSE

94.     HOM has not been unjustly enriched at the expense of SBBI, but rather, is owed

additional funds under the terms of the JV Dissolution Agreement, should it remain in full force

and effect. Alternatively, as a common law co-owner of certain intellectual property rights in

assets developed by one or both of the parties under the JV Agreement, HOM is entitled to an

accounting of the profits SBBI and its predecessor RRC have earned and continue to earn from

the distribution, sale, licensing or any other use of the copyrighted works owned or co-owned by

HOM.

## EIGHTH AFFIRMATIVE DEFENSE

95.     SBBI lacks standing to bring a claim for copyright infringement against HOM due

to its failure to register the alleged works identified as "the Product" and "SBBI's Website" in

the Complaint. SBBI also lacks standing to bring a claim for copyright infringement against

HOM, who is a beneficial owner of certain rights in "the Product," the co-author and co-owner

of the SBB e-book, and the sole author and owner of portions of the "SBBI Website."

### NINTH AFFIRMATIVE DEFENSE

96.     On information and belief, the copyright application asserted by SBBI is invalid

or unenforceable for failure to comply with one or more of Sections 407 through 412 of Title 17

of the United States Code.

### TENTH AFFIRMATIVE DEFENSE

97.     SBBI lacks trademark rights in "Small Business Bodyguard" by virtue of its

misrepresentations to the United States Patent & Trademark Office and insofar as it is the title of

a single creative work—the SBB e-book—which does not serve as a source identifier protected

under U.S. trademark law.

### ELEVENTH AFFIRMATIVE DEFENSE

98.     SBBI has engaged and continues to engage in copyright misuse, rendering its

alleged copyright unenforceable. Copyright is a statutory right that vests in the author(s) of a

particular work and does not extend to other information and materials considered fair use. SBBI

asserts that it has a registration in "the Product" and the "SBB Website" in the Complaint, when

it does not. As such, SBBI is overreaching and attempting to use any copyright it enjoys under

common law in order to bring this lawsuit, in violation of the statutory registration requirement.

Additionally, SBBI has overreached and engaged in predatory and fraudulent activities involving

use of the DMCA notice and takedown process in violation of the statute. Specifically, SBBI has

fraudulently used DMCA notices to remove Internet materials that cannot possibly be covered by

any SBBI copyright. Ms. Rodgers, on behalf of SBBI, sent several DMCA takedown requests

relating to assets subject to a joint venture dispute and 14 URLs that cover material including historical blog posts from the time of the JV Agreement, including posts relating to the launch of the SBB e-book and the HOM "affiliate page," which has only one reference to Small Business Bodyguard: "looking to promote Small Business Bodyguard? Unfortunately, TMF doesn't offer an affiliate program for Small Business Bodyguard at this time." (*See* Ex. 28, Disabled themiddlefingerproject.org URLs and Pages.) As such, SBBI is attempting to use and is using its copyright in a particular work to control competition and cannot claim a copyright monopoly in this manner, which violates public policy embodied in the statutory grant of copyright and copyright law. HOM and others have suffered and will likely continue to suffer competitive injury from SBBI's copyright misuse activities.

<div align="center">

**TWELFTH AFFIRMATIVE DEFENSE**

</div>

99.     SBBI is not entitled to preliminary or permanent injunctive relief under any appropriate equitable theory. Any alleged injury to SBBI is not immediate or irreparable; SBBI has an adequate remedy at law for any harm caused, and, should HOM be adjudged an infringer or to have committed any other unlawful acts as described in the Complaint's causes of action; the balance of hardships would not favor SBBI; and public policy weighs against a grant of injunctive relief. SBBI is further unentitled to preliminary or permanent injunctive relief because equity requires that SBBI shall have acted fairly and without fraud or deceit with respect to the controversy in issue, and SBBI has not.

## HOM'S COUNTERCLAIMS AND CLAIMS AGAINST COUNTER-DEFENDANTS

Counterclaim-Plaintiff House of Moxie, Inc. ("HOM"), by and through its undersigned counsel, alleges for its claims against Counterclaim-Defendants Small Business Bodyguard, Inc. ("SBBI") (formerly known as both Rachel Rodgers Consulting, LLC and Rachel Rodgers Consulting, Inc. ("RRC")), Rachel Rodgers Law Office PC, and Rachel Rodgers in her individual capacity (collectively, the "Rachel Rodgers Businesses"), upon knowledge as to itself and otherwise upon information and belief as follows:

### INTRODUCTION

1.     HOM restates and incorporates by reference its responses to Paragraphs 1 through 86 of SBBI's Complaint, and Paragraphs 87 through 99 of its Affirmative Defenses above.

2.     The Rachel Rodgers Businesses have taken deliberate and concrete steps to threaten HOM with liability for infringement of copyright and trademark rights arising out of the former joint venture between the parties involving the Small Business Bodyguard e-book ("SBB e-book"), which was co-authored by HOM, and related marketing and other activities. The Rachel Rodgers Businesses have also interfered with HOM's Internet business involving unrelated assets through improper use of the notice and take down procedures of the Digital Millennium Copyright Act ("DMCA"). HOM has been harmed by the Rachel Rodgers Businesses and SBBI's demand for monetary and permanent injunctive relief that, if granted, would deprive HOM of its proper ownership rights in the SBB e-book and related materials and continue to adversely affect HOM's other businesses.

3.     Additionally, HOM refutes most of the allegations SBBI raises in its Complaint, and there is an actual, current dispute between the parties regarding the validity and enforceability of the JV Dissolution Agreement, as well as HOM's noninfringement of the

intellectual property rights relating to the former Small Business Bodyguard joint venture. This ongoing controversy and dispute is causing and will continue to cause a substantial burden on HOM's lawful business and enjoyment of its valid intellectual property rights.

4.      HOM brings this action seeking, *inter alia*, a declaration that the Joint Venture Dissolution Agreement dated July 7, 2014 ("JV Dissolution Agreement") was properly rescinded and is null and void due to RRC's systematic and material breaches of its obligations under that agreement. HOM further seeks a declaration that it does not infringe any copyright in the work titled "Small Business Bodyguard" and "Small Business Bodyguard Radio" or U.S. Copyright Application Case No. 1-969366411, or any other copyright or trademark rights relating to materials identified as "the Product" in SBBI's Complaint, the Internet site identified as the "SBB Website" in SBBI's Complaint, the SBB e-book, related websites, or other activities. This declaratory relief, together with an accounting of monetary amounts owed to HOM, will make whole and restore HOM to its ownership and intellectual property rights existing prior to execution of the JV Dissolution Agreement, and enable HOM to copy and distribute the SBB e-book and associated marketing materials co-authored or created solely by HOM, without further threat, delay, and impediment caused by the Rachel Rodgers Businesses.

## THE PARTIES

5.      HOM is a Delaware corporation with a registered mailing address at 427 N. Tatnall Street, No. 54602, Wilmington, DE 19801. HOM is a company that provides strategic-copywriting advice and brand-development services marketed though a number of websites, blogs, and across social media. HOM also conducts business under "The Middle Finger Project" brand, which projects a message of conducting business differently, with humor and moxie.

6.     On information and belief, SBBI (formerly, RRC) is a New Jersey corporation with its principal place of business at 120 County Road, Suite 204, Tenafly, NJ 07670.

7.     On information and belief, Rachel Rodgers Law Office, PC is a New Jersey professional corporation and the virtual law firm of Rachel Rodgers, with its principal place of business at 120 County Road, Suite 204, Tenafly, NJ 07670. Rachel Rodgers Law Office, PC represents on its website that it has an office in New York, at 228 Park Avenue South, #26171, New York, NY 10003-1502. On information and belief, this is not a physical office address for Rachel Rodgers Law Office or a shared-space office, but rather, a mere mailing address.

8.     On information and belief, Rachel Rodgers resides at 120 County Road, Suite 204, Tenafly, NJ 07670 but provides legal advice to clients across the country through her virtual law offices.

### JURISDICTION AND VENUE

9.     This action arises under the copyright and trademark laws of the United States, 17 U.S.C. §§ 101 *et seq.,* and 15 U.S.C. §§ 1051, *et seq.*, and the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.*, with specific remedies sought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201(a) and 2202.

10.    An actual, substantial, and continuing justiciable controversy exists between HOM and the Rachel Rodgers Businesses.

11.    This Court has original jurisdiction over HOM's copyright, trademark, and federal Truth in Lending Act claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

12.    This Court has supplemental jurisdiction over HOM's breach of contract and other state law claims pursuant to 28 U.S.C. § 1367.

13.     Rachel Rodgers and Rachel Rodgers Law Office are properly joined as Counter-Defendants to HOM's counterclaims because the right to relief requested against them arises out of the same series of transactions and occurrences, and the questions of law and fact raised in HOM's counterclaims are common to all Counter-Defendants, namely, SBBI (formerly, RRC), Rachel Rodgers Law Office, and Rachel Rodgers.

14.     This Court has personal jurisdiction over SBBI because it availed itself of the Court system in this judicial district by bringing the Complaint in this action against HOM and, on information and belief, directed sales of the SBB e-book to this judicial district.

15.     This Court has personal jurisdiction over Rachel Rodgers Law Office because it lists on its website an address in this district as an address for the firm and represents that it conducts business involving the practice of law in New York at 228 Park Avenue South # 26171, New York, NY 10003-1502.

16.     This Court has personal jurisdiction over Rachel Rodgers individually as a member of the Bar of New York. On information and belief, Ms. Rodgers regularly conducts business in this judicial district through her virtual practice located in New Jersey.

17.     Venue is proper in this judicial district and division under 28 U.S.C. §§ 1391(b)(3) and (c), as well as § 1400(a). SBBI filed its Complaint in this judicial district and has availed itself of the Court system in this district. Rachel Rodgers Law Offices represents that it has an office within this district and receives mail at that address. On information and belief, Rachel Rodgers was the sole practitioner associated with Rachel Rodgers Law Office at the time that most of the events that gave rise to these claims occurred and is an active member of the New York Bar. Rachel Rodgers holds herself out as a lawyer who practices law in this judicial

district and on information and belief has provided legal advice to the residents of this district

from her virtual offices at her residence in New Jersey.

**FACTUAL BACKGROUND**

I.  **HOUSE OF MOXIE'S ATTORNEY-CLIENT RELATIONSHIP WITH RACHEL
    RODGERS AND THE CREATION OF THE SMALL BUSINESS BODYGUARD
    E-BOOK**

18.     Ashley Ambirge is CEO and founder of HOM, which provides strategic-

copywriting advice and brand-development services that are marketed though a number of

websites, blogs, and across social media.

19.     As part of its successful online business, HOM created several digital books ("e-

books") and workshops designed to help small business owners with business and branding

issues that are written in simple, entertaining, and compelling language and tones. HOM has

grown a list of over 20,000 business owners and HOM followers who receive articles and other

information from HOM, and may purchase its products and sign up for various events including

retreats and seminars.

20.     One e-book Ms. Ambirge co-authored became ensnared in a dispute between

HOM and one of its joint venture partners, leading to this lawsuit. That e-book is entitled "Small

Business Bodyguard."

21.     This saga begins when Ms. Ambirge—copywriter, business owner, and small

business advisor—hired Rachel Rodgers of The Rachel Rodgers Law Office as HOM's lawyer.

At the time, Ms. Ambirge needed a lawyer who could advise her growing business, which is

conducted exclusively online and has clients from all over the world, on a variety of legal issues

and prepare basic contracts. Ms. Rodgers holds herself out as a lawyer who provides "Intellectual

Property Strategy & Legal Counsel for Digital Entrepreneurs." *See* http://rachelrodgerslaw.com/.

22.     On or about February 20, 2013, HOM hired Rachel Rodgers and her law practice to provide legal services to HOM by executing a "Small Business Package #2 Engagement Agreement," which provided that for a term of one year, Rachel Rodgers Law Office would represent HOM (and its related d/b/a/ The Middle Finger Project) "as its general business counsel."

23.     In exchange for HOM's membership in "Small Business Package #2," HOM paid Rachel Rodgers Law Office a monthly guaranteed fixed fee of $750 plus other costs, totaling approximately $800 per month. HOM's membership plan was "expected to include the following potential project types": (a) business formation; (b) contract development and review; (c) privacy policy and terms and conditions; (d) copyright representation; (e) trademark representation; and (f) an annual legal checkup. (*See* Ex. 9, February 20, 2013 Engagement Agreement.)

24.     During this one-year term, Ms. Rodgers and Rachel Rodgers Law Office performed legal services on behalf of HOM under the terms of this engagement, including formation of its Delaware corporation, preparing related corporate documents and tax-related filings, and filing a trademark application for THE MIDDLE FINGER PROJECT trademark.

25.     Near the end of this one-year engagement and upon hiring new counsel, HOM discovered that Ms. Rodgers and Rachel Rodgers Law Office was guilty of negligence in carrying out these legal duties, causing HOM to incur significant additional costs to correct their mistakes. This negligence is described in greater detail *infra*.

26.     HOM did not renew its one-year engagement with Rachel Rodgers Law Office and the attorney-client relationship ended before March of 2014. HOM paid all of the monthly fees under this engagement agreement, despite the fact that it had learned of Ms. Rodgers and Rachel Rodgers Law Office's negligence before the relationship was terminated.

A.      **Rachel Rodgers Becomes House Of Moxie's Business Partner As Well As Its Lawyer**

27.     A few months into HOM's attorney-client relationship with Ms. Rodgers and Rachel Rodgers Law Office, Ms. Rodgers became aware of HOM's successful launch of a series of downloadable video tutorials that HOM created in partnership with another company; Ms. Rodgers also became aware of the generous income both parties had received from that project in the first month alone.

28.     Ms. Rodgers then approached Ashley Ambirge, who is CEO of HOM, with a proposition to become business partners on a project—to create and sell an e-book addressing issues important to small business owners, including legal issues. The project had a ready-made audience made up of the more than 20,000 small business owners who followed Ms. Ambirge and her HOM Internet businesses, including "The Middle Finger Project" blog and website.

29.     And so the joint venture between HOM and RRC (Rachel Rodgers's "consulting company") began, with Ms. Ambirge signing a contract that described the terms of the joint venture and both parties' obligations. Ms. Rodgers drafted that contract and Ms. Ambirge signed it without consulting with another lawyer; after all, her new business partner *was her lawyer* and she trusted her partner.

30.     Ms. Ambirge did not realize at the time that Ms. Rodgers's duties as her corporate lawyer and Ms. Rodgers's own business interests would collide in ugly ways as the joint venture moved forward.

31.     And Ms. Rodgers did not inform HOM that it should hire outside counsel to represent its interests in this matter before signing any agreement, even though there was a potential for directly adverse interests between Ms. Rodgers and RRC on the one hand, and Ms. Rodgers and Rachel Rodgers Law Office's current client, HOM, on the other.

32.     In late April 2013, even before the JV Agreement was signed, Ms. Ambirge began brainstorming names for the project, ultimately deciding on "Small Business Bodyguard," and presenting it to Ms. Rodgers, who loved the name. Ms. Ambirge also created the tagline for the e-book.

33.     On May 5, 2013, HOM and RRC entered into the Small Business Bodyguard Joint Venture Agreement ("JV Agreement"). (*See* Ex. 2, JV Agreement.)

34.     The parties agreed to a 50-50 split of costs and profits from the e-book sales.

35.     Ms. Ambirge and HOM worked for months on the e-book content. Ms. Ambirge and others at HOM applied deft copyrighting skills to rudimentary legal checklists and notes Ms. Rodgers provided, crafting the content into a fun, enjoyable, and entertaining 234-page e-book (the "SBB e-book") using the "voice" of Ms. Ambirge's online brand, which was well known to her 20,000+ followers.

36.     Ms. Ambirge also created marketing content that would create a "buzz" before the launch of the e-book and entice potential purchasers to learn more about it, including a number of posts on HOM's "The Middle Finger Project" blog.

37.     Ms. Ambirge and HOM not only edited and transformed Ms. Rodgers's legal material to create the SBB e-book content, but also, wrote the www.smallbusinessbodyguard.com website content to sell the SBB e-book, and the copy for the sales page, which consumers accessed to order the SBB e-book. All of this content was drafted using Ms. Ambirge's specialized knowledge as a professional copywriter.

38.     HOM also wrote the materials for a 5-part clinic that would be used as a promotional tool, promotional badges and slogans, and all of the email marketing campaigns that would be delivered to promote sales of the SBB e-book.

39.     Ms. Ambirge even donated her time during this period to re-write the website copy for one of Rachel Rodgers's other businesses.

40.     After the SBB e-book sales effort launched in July of 2013, HOM wrote extensively about "Small Business Bodyguard" on its websites, blogs, and social media in an effort to market and promote awareness of the SBB e-book.

41.     To her existing small business clients and target audience, Ms. Ambirge was the face and co-author of "Small Business Bodyguard" and they would purchase the SBB e-book by clicking through links on her websites, which led them to the http://www.smallbusinessbodyguard.com/ site set up to promote and sell the SBB e-book. Under Paragraph 3.1 of the JV Agreement, RRC (i.e., Ms. Rodgers) was responsible for the administrative duties for the joint venture, including "all legal agreements, payment processing, accounting, payables, banking and membership list management of the Small Business Bodyguard list." RRC was also tasked with reporting on these administration duties to the joint venture (i.e., Ms. Ambirge and HOM) on a monthly basis. (*See* Ex. 2, JV Agreement ¶ 3.1.)

42.     Ms. Rodgers and RRC both had a fiduciary duty to the joint venture to perform the administrative duties and protect the joint venture's intellectual property.

**B.      House Of Moxie Discovers Rachel Rodgers's And The Rachel Rodgers Law Office's Numerous Mistakes Relating To The Small Business Bodyguard Joint Venture As Well As Other Legal Work For House Of Moxie**

43.     Approximately six months after the SBB e-book was completed and offered for sale, Ms. Rodgers contacted her client and indicated that she wanted more than the 50% share of profits she was entitled to recover under the JV Agreement she drafted. Ms. Rodgers stated that she wanted to take over Small Business Bodyguard and base her legal career off of the SBB e-book and associated classes that she said only a lawyer could provide.

- 24 -

44.     At that point, Ms. Ambirge became uncomfortable and realized that she should hire another attorney to consider the situation and represent her interests in a potential restructuring of the joint venture between RRC and HOM.

45.     After hiring new counsel, Ms. Ambirge discovered that Ms. Rodgers had neglected to carry out some of the corporate and intellectual property work that Ms. Rodgers was engaged to perform for HOM under the year-long retainer agreement.

46.     Among other problems, Ms. Rodgers and Rachel Rodgers Law Office had filed incorrect corporate paperwork for HOM (designating it as a C-Corp rather than an S-Corp), which significantly increased the company's tax liabilities and exposed it to penalties for underpayment of taxes. Additionally, Ms. Rodgers hadn't let her know about a rejection of HOM's trademark application that had occurred three months earlier, though Ms. Ambirge had asked about the status of that application several times. HOM has other trademarks that she believed Ms. Rodgers had registered under the yearly retainer agreement, but no applications were filed with the U.S. Patent and Trademark Office ("PTO") for the company's other marks.

47.     These issues were not confined to the corporate work that Ms. Rodgers and Rachel Rodgers Law Office was obligated to perform for HOM under the retainer agreement.

48.     Ms. Ambirge's concerns regarding her business partner's lack of diligence and care with HOM's paperwork and assets spread to the joint venture when she learned of errors associated with the assets of the joint venture.

49.     Ms. Ambirge learned that Ms. Rodgers' law firm had likely filed an incomplete copyright application (which also contained inaccuracies) covering a Small Business Bodyguard work. The Copyright Office had not registered this application over 8 months later and Ms.

Rodgers couldn't produce a copy of the e-filing receipt for the deposit materials or the actual files deposited in support of the copyright application.

50.     Additionally, Ms. Rodgers had filed a trademark application for SMALL BUSINESS BODYGUARD on behalf of the joint venture, which incorrectly stated in a sworn declaration that this mark had already been used in connection with a variety of goods and services in four separate classes. Ms. Rodgers filed that declaration on behalf of HOM and RRC, but neither entity had used the mark in association with any goods or services other than the SBB e-book entitled "Small Business Bodyguard."

51.     Ms. Rodgers either didn't understand or didn't care that use of a mark as a book title is not the type of use that is protected under U.S. trademark law. But after new counsel raised these issues with Ms. Rodgers and asked her to abandon the trademark application or remove HOM's name from it if she did not fix the declaration, she declined to do so. (*See* Ex. 11, April 28, 2014 Letter.)

> **i.     Rachel Rodgers And Her Law Office Made Several Serious Mistakes Involving Joint Venture Intellectual Property Assets, And Did Not Fix Them When New Counsel Disclosed Them**

52.     On or about July 13, 2013, Ms. Rodgers, acting as legal counsel for both RRC and HOM as members of the joint venture, filed an application to register the name SMALL BUSINESS BODYGUARD on the Principal Register of the PTO (the "SBB Trademark Application"). Ms. Rodgers signed the Declaration attesting to the truth of the statements contained in the SBB Trademark Application. In that Declaration, Ms. Rodgers acknowledged that willful false statements are punishable by fine or imprisonment and may jeopardize the validity of the application or any resulting registration. (*See* Ex. 10, SBB Trademark Application, Serial No. 86/009,529 dated July 13, 2013.)

53.     Ms. Rodgers is listed as the correspondent of record for the SBB Trademark Application and Rachel Rodgers Law Office is listed as the address for all correspondence relating to this application.

54.     Ms. Rodgers filed the SBB Trademark Application by representing to the PTO that RRC and HOM had been using the SMALL BUSINESS BODYGUARD mark, in commerce, in connection with many goods and services falling within four different categories of use since "at least as early as 6/21/2013." (*See* Ex. 10, SBB Trademark Application, Serial No. 86/009,529 dated July 13, 2013.)

55.     For example, Ms. Rodgers represented to the PTO that the joint venture had been using the mark SMALL BUSINESS BODYGUARD since June 21, 2013 in connection with the following services in International Class 35 (Advertising and Business):

> International Class 035: Advice and information concerning small business management; advice and information concerning small business management and organization; business advice and information; business advice and information concerning building and operating an online business; business organization advice; providing a web site featuring business information in the form of written lessons, audio recordings, and other educational materials; providing a website that features a directory of virtual law offices; providing business information via a website; providing an online directory of virtual law offices that specialize in business law

56.     On information and belief, as of June 21, 2013, neither HOM nor RRC had actually used this mark in association with many, if not all, of the goods or services identified. The joint venture's only consumer-facing activity on June 21, 2013, was a basic website landing page set up to capture the email addresses of people interested in receiving the promotional "free legal clinic" emails as a teaser for sales of the SBB e-book, once it launched. The first of the legal clinic emails were sent out on July 8th, and the SBB e-book did not launch and become available for sale until July 24, 2013.

57.     As an attorney who represents herself as a specialist in intellectual property matters including trademarks, Ms. Rodgers was well aware that she could have filed the SBB Trademark Application on an intent-to-use basis, but she chose not to do so. And HOM and Ms. Ambirge, non-lawyers represented by Ms. Rodgers and Rachel Rodgers Law Office, relied upon Ms. Rodgers to file the SBB Trademark Application properly.

58.     Moreover, in or around January/February 2014, HOM's newly-engaged counsel orally relayed to Rachel Rodgers its concerns the SBB Trademark Application's representations as to "use" and requested that Ms. Rodgers provide evidence that the statements made in the application were accurate. Neither HOM nor its counsel ever received such evidence from Ms. Rodgers.

59.     During this same time period, HOM's counsel also raised concerns with other aspects of Ms. Rodgers's legal representation of the joint venture and HOM, including a copyright filing and HOM's corporate and tax documentation.

60.     Ms. Rodgers subsequently requested that HOM put these various grievances in writing. Thus, on April 28, 2014, counsel for HOM sent Ms. Rodgers a letter detailing HOM's concerns including the representations of use contained in the SBB Trademark Application. In that letter, HOM again requested that Ms. Rodgers provide HOM any information regarding the usage of the mark in the four International Classes that Ms. Rodgers declared to the PTO had been in use since June 21, 2013. Counsel for HOM also noted that the SBB Trademark Application would soon go abandoned if Rachel Rodgers Law Office did not respond to the outstanding Office Action. (*See* Ex. 11, April 28, 2014 Letter.)

61.     Ms. Rodgers never shared any use information or evidence with HOM or HOM's counsel. Nor did she or her law office undertake any efforts to correct the misrepresentations.

Instead, on April 29, 2014—the day after receiving HOM's letter—Rachel Rodgers Law Office responded to an outstanding Office Action issued by the PTO Examining Attorney relating to the SBB Trademark Application.

62. On information and belief, at the same time as Ms. Rodgers filed the Office Action response on April 29, 2014, Ms. Rodgers made further misrepresentations to the PTO. In April of 2014, the JV Agreement between HOM and RRC was still in place and HOM owned 50% of the trademark rights attendant on THE SMALL BUSINESS BODYGUARD name. Nevertheless, Ms. Rodgers and Rachel Rodgers Law Office informed the PTO that a change in ownership of the SBB Trademark Application had occurred. This was a misrepresentation—HOM was still a co-owner of Small Business Bodyguard assets, including any intellectual property created in support of the joint venture under the JV Agreement, which was still in full force and effect on April 29, 2014.

63. On June 5, 2014, the PTO issued a Suspension Letter "in response to applicant's communication filed on 4/29/14" that stated:

> **ASSIGNMENT OF OWNERSHIP:** An assignment involving a change of ownership in this application is pending before the USPTO or International Bureau, and therefore, action is suspended on the application until the assignment is recorded and entered into the appropriate electronic databases. *See* 37 C.F.R. § 2.67; TMEP § 502.02. After the assignment has been recorded, the application will be removed from suspension and returned to active status. Applicant is encouraged to notify the trademark examining attorney when the assignment has been recorded, and to supply the relevant reel and frame numbers.

(*See* Ex. 12, June 5, 2104 PTO Suspension Letter.)

64. Later, on July 14, 2014, Ms. Rodgers filed the June 7, 2014 JV Dissolution Agreement and recorded an assignment of the trademark from HOM to RRC. (*See* Ex. 13, July 14, 2014 Assignment.) One of Ms. Rodgers's new colleagues in the Rachel Rodgers Law Office

filed a second assignment from RRC to SBBI on July 17, 2014. (*See* Ex. 14, July 17, 2014 Assignment.)

65.     The PTO approved the SBB Trademark Application for publication on August 14, 2014, but as of today's date, it has not been published for opposition.

66.     Ms. Rodgers and Rachel Rodgers Law Office mishandled the filing of the SBB Trademark Application on behalf of the joint venture and signed a Declaration in support of that application that contains false statements.

67.     Ms. Rodgers and Rachel Rodgers Law Office also mishandled the July 25, 2013 filing of a copyright application, which SBBI cites in support of its claim for copyright infringement. This application has neither been refused nor approved by the Copyright Office, calling into question whether it is even a valid application, since it appears to have merited no action from the Copyright Office to date, over 14 months later. It is also unclear what content, if any, was deposited with the Copyright Office in support of the application. Regardless, as described in HOM's Motion to Dismiss (*see* Dkt. Nos. 009, 011), this application cannot confer standing on SBBI to allege a copyright infringement claim.

> **ii.     Rachel Rodgers And Her Law Office Also Made Mistakes Involving HOM's Corporate Paperwork, Showed A Lack Of Diligence, And Failed To Communicate Adequately With HOM Regarding Its Intellectual Property**

68.     Under its monthly retainer agreement with HOM, Ms. Rodgers and Rachel Rodgers Law Office filed one trademark application on behalf of HOM, an application for the mark THE MIDDLE FINGER PROJECT, which is the brand for one of HOM's most important businesses. Ms. Rodgers filed the application June 24, 2013. On December 30, 2013, the PTO Examiner issued an Office Action refusing registration "because the applied-for mark consists of or includes immoral or scandalous matter" under Section 2(a) of the Trademark Act.

69.     Although HOM requested updates on the status of its trademark application for THE MIDDLE FINGER PROJECT, HOM was never notified about the status of the application other than it was "pending" and HOM was never informed about the December 30, 2013 refusal from the PTO, or that HOM must file a response to the refusal within six months (and failure to do so results in the application being "abandoned").

70.     HOM believed that its trademark application was moving through the review and approval process without issues, and did not learn about the Office Action refusal until HOM hired new counsel in late January 2014. HOM had to pay for new counsel to prepare and file a response that ultimately overcame the pending rejection, despite the fact that this work was covered and should have been performed under HOM's prior retainer agreement with Rachel Rodgers Law Office, as Rachel Rodgers Law Office agreed. (*See* Ex. 15, January 19, 2014 Request for Info and Response; Ex 9, February 2013 Rachel Rodgers Law Office Engagement Agreement.)

71.     In 2013, while engaged as corporate business counsel for HOM, Ms. Rodgers failed to file an S-Corp election form with the IRS on behalf of HOM. Because of this failure— as HOM learned from its tax counsel in April of 2014—it had been subject to double taxation by the IRS and would owe an estimated additional $40,000 in taxes to the federal government. HOM would also be subject to fees and penalties in addition to the $40,000 in additional taxes owed.

72.     Although HOM's tax counsel was ultimately successful in avoiding this double payment, HOM did incur a penalty fee and additional attorney fees that it would not otherwise have incurred but for Ms. Rodgers's and Rachel Rodgers Law Office's mistake involving HOM's corporate paperwork.

73.     Ms. Rodgers and Rachel Rodgers Law Office negligently handled the trademark filing for THE MIDDLE FINGER PROJECT, as well as the S-Corp election filing for HOM.

## II.     DISSOLUTION OF THE HOM AND RRC JOINT VENTURE

### A.     Rachel Rodgers Decides She Wants To Be The Sole Owner Of Small Business Bodyguard And Starts Acting Like She Already Is, To HOM's Detriment

74.     In or around early January 2014, Rachel Rodgers sent Ashley Ambirge a video explaining that she felt the 50/50 split between RRC and HOM was unfair and she was "getting the short end of the stick."

75.     Rachel Rodgers suggested that she and RRC should own the entire joint venture and would like to discuss a way to buy out HOM's half of the joint venture. Ms. Rodgers wanted to own the SBB e-book and associated intellectual property and control all aspects of the business. She also wanted to retain 100% of the revenue associated with any sales that she made.

76.     Ms. Ambirge, however, wanted better visibility into the financial side of the business, more control over customer response and the customer experience, and was concerned that the work she put into writing the SBB e-book and marketing it would be fruitless if Ms. Rodgers took over ownership and control of the entire operation and continued to manage the copyright and trademark protection efforts.

77.     As the months dragged on after Ms. Rodgers suggested a restructuring of the relationship, Ms. Ambirge and Ms. Rodgers had trouble setting the basic terms of a new business structure relating to the SBB e-book. RRC and HOM had difficulty agreeing on a price for HOM's half of the joint venture—the parties were over $50,000 apart in their starting numbers. The parties were so far apart that HOM and RRC had only sporadic discussions between January and May, with each side essentially sticking to their widely divergent positions. The joint venture

thus continued, with HOM entitled to receive 50% of all profits from the venture and the right to receive a monthly report on administrative issues. But Ms. Rodgers and RRC had other ideas.

78.     Remarkably, during a portion of this time period when HOM and RRC remained joint venturers under the JV Agreement and after Ms. Rodgers asked to restructure the relationship, Ms. Rodgers and Rachel Rodgers Law Office continued to have an *attorney-client relationship* with HOM.

79.     Additionally, Ms. Rodgers and RRC flagrantly breached their fiduciary duties to HOM and the joint venture, as well as breaching RRC's duty of good faith and fair dealing under the JV Agreement. For example, after the relationship became strained, on March 14, 2014, RRC removed HOM's shared access to document folders used to carry out marketing and promotional efforts in support of the SBB e-book. (*See* Ex. 16, March 14, 2014 Screen Shot.)

80.     Later, RRC removed HOM's access to the Small Business Bodyguard website, http://www.smallbusinessbodyguard.com/, preventing HOM from fully exercising her rights and duties as co-owner of the website.

81.     RRC also refused to provide HOM's 50% share of revenue for the month of April, as required under the JV Agreement, essentially holding that payment (and the soon-due May payment) hostage unless and until HOM agreed to a buyout under RRC's terms.

**B.     The Parties Start Developing A JV Dissolution Agreement**

82.     Productive negotiations between HOM and RRC (rather than the stalemate that had existed since late December/early January) did not take place until an hours-long, amicable phone conversation between Rachel Rodgers and Ashley Ambirge personally (without counsel for HOM) on May 2, 2014.

83.     In a follow-up email to Ms. Ambirge on May 5, 2014, Ms. Rodgers wrote:

> Just wanted to see what your thoughts were after having some time to ponder things over the weekend. You were also gonna send me a list of your takeaways from the talk/plan to move forward.

(*See* Ex. 17, May 5-7, 2014 Email Thread.)

84.     In a May 7, 2014 email that would come to haunt her, Ms. Ambirge responded with an outline of her thoughts on a solution for the joint venture. Ms. Ambirge proposed an owner/licensee buyout structure, with Ms. Rodgers as owner, and Ms. Ambirge as licensee, that would include an up-front sum of $15,000 (substantially less than Ms. Ambirge's original asking amount of $100,000) and a license allowing her to earn 100% of the gross sales of any purchases of the SBB e-book originating from Ms. Ambirge's website via what is known as an "affiliate link":  "Whatever I sell the book for is what I get (the gross revenue=my affiliate fee)." Ms. Ambirge ended the email by stating she had further ideas regarding the details. Ms. Rodgers responded, "Yes. So what are your thoughts on the deets?" (*See* Ex. 17, May 5-7, 2014 Email Thread.)

85.     On May 12, 2014, Ms. Ambirge sent a friendly email to Ms. Rodgers letting her know that the pending details mentioned were being sent over, and also inquired when HOM could expect to receive its payment for its 50% share of the revenue for the month of April 2014 (which was already seven days overdue under the JV Agreement *still in effect*).

86.     HOM's counsel followed up with her own inquiry about the payment on May 13, 2014, noting that "We really don't think it's appropriate to wait for any reformation of the relationship between HOM and RRC, going forward, to issue for the payment for April. . . .The April payment is already overdue." And the draft agreement restructuring the relationship "is completely independent of the April payment to HOM." (*See* Ex. 18, May 12-13, 2014 Email Thread.)  In response to HOM and HOM counsel's inquiries, Ms. Rodgers stated:

I'd prefer to make the payment when we execute the Agreement.

*       *       *

The longer you delay, the greater the burden on me. Is Ash going to ask for half of the proceeds for the month of May as well? And June?

*       *       *

I will send Ash her share of the proceeds when we have executed the agreement. Delay on your part is the only reason for delay to Ash of the money she needs. I will continue to move promptly on my side to get this deal done.

(*See* Ex. 18, May 12-13, 2014 Email Thread.)

87.     But there was no "deal" in place, only what Ms. Rodgers decided she wanted to do with Small Business Bodyguard. And Ms. Rodgers was not above using the words of *her client* (HOM was still a joint venturer) and *former client* to obtain what she wanted. After the May 7, 2014 email from Ms. Ambirge, Ms. Rodgers repeatedly insisted that the May 7 email from her client was the "deal" and she and RRC refused to discuss any contract terms not included in that email that lacked the "deets":

AA: Do these terms seem fair to you? If not, how can we work together on this? Please - no more animosity. We had a great talk over the phone and I'd like to keep it that way!

RR: Nothing has changed since we reached agreement on May 7. . . . I am not willing to re-negotiate that deal at this point in time.

AA: Not trying to renegotiate - but, as we discussed, there would likely arise some additional items that would arise that we would need to address, like what happens when I send affiliates through my link or people that want to get comped copies, etc. Let me know your thoughts.

RR: My thoughts are that I am ready to close on the deal we made. I am not going to entertain "additional items" at this stage.

(*See, e.g.,* Ex. 19, May 17-19, 2014 Email Thread.)

88.     Ms. Ambirge was completely baffled as to how her former lawyer and current business partner could twist an email outlining her takeaways from an initial discussion to a signed and sealed deal that could not be further discussed or negotiated.

89.     Even in Ms. Ambirge's May 7, 2014 email, however, she made clear that HOM intended to recover a significant portion of the value associated with the transfer to RCC of the SBB intellectual property rights by receiving 100% of the gross sales price of HOM's sales of the book for a period of two years (after two years, deductions would be permissible). As Ms. Ambirge described to Ms. Rodgers:

> In prior discussions, you know I thought $100,000 would be a fair transfer of ownership fee, given that I've already netted almost $100K to date, as have you (and we're not even at the full year mark yet), and on top of that, you'll naturally be earning all of our word of mouth sales from anyone who types it into the search bar, and from our organic SEO, 'til death do us part.
>
> *     *     *
>
> That said, however, I want the best for this thing, and for you, and for me, and I am okay with losing that word of mouth momentum on my end, from all the Google juice and folks that type in "Small Business Bodyguard" as long as we can work out a restructure deal that makes us both happy. So even though Antigone thinks I've finally just gone and fallen off my rocker, (Hi, Antigone!), I want to **take a loss on the true value of the SBB transfer of ownership up front, and a loss on the value of organic search traffic sales going forward,** so that we can move this restructuring effort forward and focus on our big common goal: Selling this bad boy. Right? I know you're on board with that.
>
> *     *     *
>
> So I'm proposing a simple as hell, $15,000 buy out fee for transfer of ownership to you. Boom. Simple. ***This only covers part of the losses I know I'll incur from organic search sales***, and is pretty close to your initial proposal.
>
> *     *     *

And then, in order to make this easy, but also ***help make up some of the
ground for the value I'm losing because I am giving you full
ownership of the SBB assets***, AND to simplify all of the bookkeeping
(ick), what we can do is a flat 100% affiliate fee for HOM sales of SBB
going forward for a period of 2 years, with no deducts of CC fees or any
admin overhead. ***Whatever I sell the book for is what I get (the gross
revenue=my affiliate fee). This way, I get to recover a little of the value
I am transferring to you initially in the buyout and transfer of the SBB
website over time - and there's no big crazy lump sum payment up
front on your end.*** I would need a license to the SBB stuff that allows
me to continue selling the product, of course.

(*See* Ex. 17, May 5-7, 2014 Email Thread) (emphasis added).

90.     The term "gross sales" or "gross revenue" has an accepted and standard

meaning—revenue obtained from the sale of products before various costs associated with those

sales are deducted (COGS). This is the meaning understood by Ms. Ambirge and HOM

throughout its discussions leading to the signing of the JV Dissolution Agreement.

91.     But what Ms. Ambirge and HOM did not know at the time was that RRC, Ms.

Rodgers, and her various attorneys both in and outside of Rachel Rodgers Law Office, had a plan

in mind to reduce the amount of money HOM would receive as consideration for transferring its

intellectual property rights—a plan they kept hidden from HOM until after the JV Dissolution

Agreement was signed. RRC's plan was intended to deprive HOM of its full consideration for

the transfer of rights to RRC, and that plan succeeded, prompting HOM's rescission of the

agreement.

92.     Despite her prior insistent refusal to alter the "agreement" she claimed was

written in stone in Ms. Ambirge's May 7 email, Ms. Rodgers and SBBI ultimately demanded a

litany of concessions from Ms. Ambirge and HOM at the eleventh hour of the negotiations,

insisting on adding completely new terms to the JV Dissolution Agreement that were not in Ms.

Ambirge's May 7 email that Ms. Rodgers previously, repeatedly insisted was the final agreement

between the parties. Exhausted, under pressure from Ms. Rodgers who was on vacation and "waiting in a Starbucks" for HOM's final sign-off, and wanting to part ways amicably, HOM and Ms. Ambirge agreed to nearly every one of Ms. Rodgers's and SBBI's demands. (*See, e.g.*, Ex. 20, June 7, 2014 Email Thread.)

93.     HOM and RRC ultimately signed the JV Dissolution Agreement on June 7, 2014, which dissolved the joint venture but allowed HOM to continue to sell the SBB e-book and retain 100% of revenue generated by HOM's sales for a period of two years, 75% of such revenues for the third year, with an option to sell under the standard affiliate program thereafter. In return, the Small Business Bodyguard assets would be transferred to and owned by RRC.

94.     But, as HOM and Ms. Ambirge were to later learn, before any joint venture restructuring occurred, Ms. Rodgers and Rachel Rodgers Law Office had already initiated transfer of some of the joint venture assets into RRC's name alone. Soon after that, Ms. Rodgers renamed "Rachel Rodgers Consulting" and it became "Small Business Bodyguard, Inc."

III.    **SBBI'S BAD FAITH AND SYSTEMATIC BREACH OF THE JV DISSOLUTION AGREEMENT CAUSES HOUSE OF MOXIE'S RESCISSION OF THE AGREEMENT**

95.     Almost immediately, Ms. Rodgers failed to honor the JV Dissolution Agreement. Ms. Rodgers deducted a "finance charge" from the 100% gross revenue due to HOM under the JV Dissolution Agreement, and refused to provide the most basic information (also required under the JV Dissolution Agreement) about how she was calculating HOM's commissions. Ms. Rodgers also failed to make HOM's commission payments (even the lower, miscalculated payments) that HOM was entitled to receive for its sales of the SBB e-book up until the time the rescission occurred. Ms. Rodgers also stopped making payments to other parties who promoted

and sold the SBB e-book in return for a commission, in violation of the "Affiliate Agreement" Ms. Rodgers drafted and used to govern SBBI's relationship with those parties.

96.     On or about June 16, 2014, SBBI increased the cost of the SBB e-book from $275 to $495. Ms. Rodgers and SBBI never informed Ms. Ambirge or HOM that such a drastic increase in price was contemplated, or even that it had taken place once it did.

97.     This increase in price directly and negatively affected HOM's right to its bargained-for consideration for the transfer of rights to SBBI (in the form of sales commissions). HOM's ability to generate sales of the SBB e-book was hindered not only by the effect of the drastic price increase on the SBB e-book's overall salability, but also by preventing HOM from marketing the SBB e-book in a manner consistent with SBBI's new marketing tactics.

98.     RRC also concealed from HOM the fact that SBBI intended to run and did run a "last chance" promotion before the price increased to $495. But members of HOM's audience who received SBBI's promotional emails (the SBB mailing list was substantially comprised of HOM's audience of followers) began to forward these emails to Ms. Ambirge. For example, a June 16, 2014, email stated:

> So now that we've proven that Small Business Bodyguard works and that you can protect yourself and set your business up to do better than you could have imagined without paying thousands of dollars to a stuffy attorney who doesn't get you or your business, its time for us to start charging what SBB is truly worth.
>
> **Therefore, the price of SBB will be going up to $495 in just a few days**. So we had to give you this last opportunity to get your legal affairs in order and have the most ass-kicking, karate-chopping, take-no-shit-ing Bodyguard by your side as you do business.
>
> So here's the very spicy deal that we've got for you (you hot tamale you!):
>
> - Grab Small Business Bodyguard for a smokin' hot price of only $247 by Thursday, June 19th.

- And if that doesn't burn your tongue (in a good way), we are bringing back the payment plan (something we haven't offered since August 2013!) so you can **break it up into 2 payments of $147!**

99.     To add insult to injury, SBBI sent and signed this "Hot Deal" email from "Ash + Rach." (*See* Ex. 21, June 16, 2014 Hot Deal Email.)

100.     On top of this price increase and stealth sale, SBBI instituted a "payment plan" that allowed customers to pay for the SBB e-book in two payments, as well as the single "best value full payment." Under the $495 "best value full payment" price, the customer could also choose to make 2 payments of $277, thus paying an additional, but non-disclosed, $59 for the privilege.



101.     Soon after learning of SBBI's new price and promotion, HOM learned that its affiliate link was not working properly, in addition to some other issues Ms. Ambirge had been hearing from customers unable to complete their sale on the SBB website run by SBBI. Ms.

Ambirge contacted Ms. Rodgers directly to check on this issue. (*See* Ex. 22, June 17, 2014 Email from Ambirge to Rodgers.) Ms. Rodgers never responded. HOM's counsel also attempted to contact Ms. Rodgers, to no avail.

102.    Thus, HOM's counsel reached out to Vickie Pynchon, the lawyer who had represented SBBI at the end of the JV Dissolution Agreement discussions. In two emails sent on Friday, June 20, 2014, HOM's counsel explained the various issues HOM had been experiencing with its attempts to sell the SBB e-book, particularly with respect to the amounts being deducted from HOM's gross sales. Ms. Pynchon promised to talk to Ms. Rodgers and "get back to you on all of this by Monday." (*See* Ex. 23, June 20-24, 2014 Email Thread.)

103.    After failing to hear back from Ms. Pynchon or Ms. Rodgers, HOM's counsel checked in on June 24, receiving the following response from Ms. Pynchon:

> EVERYTHING cannot possibly be ASAP completely URGENT CAN'T WAIT another second. Is Ash in intensive care? Is the mafia demanding that she pay a ransom that she can't possibly service unless Rachel responds to her every request RIGHT AWAY????
>
> Both Rachel and I are incredibly busy. I will get back to you at the earliest opportunity. Also, it would be really GREAT if Ash just communicated with Rachel directly. . . .
>
> Rachel will respond to Ash as promptly as possible. More promptly, actually, if she isn't harassed within an inch of her life by all these URGENT MUST SET EVERYTHING ELSE ASIDE MATTERS!!!!#%@%@
>
> Have a good day.
>
> Vickie

(*See* Ex. 23, June 20-24, 2014 Email Thread.)

104.    But of course HOM had been attempting to communicate directly with Ms. Rodgers, only to be ignored. Nevertheless, HOM's counsel politely checked in again on July 2,

2014 with both Ms. Pynchon and Ms. Rodgers. As usual, Ms. Pynchon stalled. (*See* Ex. 4, July 2, 2014 Email Thread.)

105.     Ms. Rodgers finally responded with an incredible explanation that the discrepancy in HOM's sales commissions was due to "[f]inance charges on payment plans" that "are not a part of the Gross Sales Price," but "an additional administrative cost charged to the client to cover the costs and labor associated with extending credit to them for 30 days." (*See* Ex. 24, July 2-3, 2014 Email Thread.)

106.     HOM's counsel asked to schedule a time to discuss these issues, but Ms. Rodgers responded: "After devoting 6 months to negotiating this agreement, I am not willing at this point to devote a whole lot of time to interpreting it. So, no, I am not willing to schedule a call to discuss this matter." (*See* Ex. 24, July 2-3, 2014 Email Thread.)

107.     At wit's end, on July 9, 2014, HOM sent RRC a formal notice of dispute according to Section 7 of the JV Dissolution Agreement. (*See* Ex. 5, July 9, 2014 Dispute Letter; Ex. 1, JV Dissolution Agreement, ¶ 7.2.)

108.     HOM's counsel continued its efforts to schedule a time to discuss these disputes and engage in the business negotiations required by the JV Dissolution Agreement's dispute resolution procedures. But Ms. Rodgers and her associate at Rachel Rodgers Law Office, Elizabeth Ragavanis, repeatedly stalled for time or simply refused to talk, refusing even to attempt to schedule any time for dispute resolution discussions.

109.     Then, on July 28, 2014, Ms. Ragavanis informed HOM that "the affiliate commission for Ash's affiliate sales of SBB during the month of June will not be paid by the end of the month" as required under the JV Dissolution Agreement. (*See* Ex. 6, July 28, 2014 Ragavanis Email.)

110.     This bold statement that HOM's consideration simply "will not be paid" on the date required by the JV Dissolution Agreement, added to Ms. Pynchon's, Ms. Rodgers's, and Ms. Ragavanis's generally obstructive behavior, refusal to abide by the terms of the JV Dissolution Agreement, and refusal to participate in the contractually-required dispute resolution discussions, caused HOM's counsel finally to send a letter on August 18, 2014 rescinding the JV Dissolution Agreement and noting that, as co-author of the e-book and creator of the name "Small Business Bodyguard," HOM would now continue its efforts to promote and sell the SBB e-book as co-owner of the SBB intellectual property assets. (*See* Ex. 7, August 18, 2014 Rescission Letter.)

III.     **THE RODGERS BUSINESSES ENGAGE IN CONDUCT THAT DEPRIVES HOM OF ITS INTELLECTUAL PROPERTY RIGHTS AND INTERFERES WITH ITS BUSINESS AND REPUTATION**

111.     After rescission of the JV Dissolution Agreement, and consistent with its rights as co-owner of the SBB e-book and related assets, HOM made preparations to begin marketing and selling the SBB e-book on its own website.

112.     Less than 48 hours after HOM launched its new website, http://smallbusinessbodyguardonline.com/, HOM received a notice from its web hosting company, Bluehost, that HOM's entire account—not just the SBB site—had been deactivated because of a "terms of service - copyright violation." (*See* Ex. 25, August 21, 2014 Bluehost Notice.) HOM later learned this occurred because of takedown notices Ms. Rodgers sent to the web hosting company and other service providers under the Digital Millennium Copyright Act ("DMCA"). Those service providers were involved in hosting all of Ms. Ambirge's various websites including unrelated e-books and other HOM marketing efforts.

113.    Ms. Rodgers and SBBI sent the Bluehost notice on August 19, 2014, even though they had already received and acknowledged the August 18, 2014 rescission letter. Therefore, at the very least, Ms. Rodgers and SBBI knew that a dispute over SBBI's contractual ownership rights was in play. SBBI and Ms. Rodgers made statements in these DMCA notices under penalty of perjury that she and SBBI are "the copyright owner . . . of an exclusive right that is allegedly infringed" with a "good faith belief" and that the listed materials are infringing and unauthorized. These statements are misleading and disingenuous, if not outright false. The August 19th notice listed 8 URLs, all of which related solely to content found under the URL "http://smallbusinessbodyguardonline.com." The website has been taken down entirely by Bluehost and is no longer active. Ms. Ambirge is unable to make any sales of the SBB e-book through this site. (*See* Ex. 26, August 19, 2014 Letter from Rachel Rodgers to Bluehost.)

114.    Ms. Ambirge and HOM responded with proper counter notices according to DMCA procedures. In response, Ms. Rodgers filed this lawsuit under her new corporate name, SBBI.

115.    On September 6, 2014, Ms. Rodgers and SBBI sent Bluehost notice of SBBI's filing of the Complaint in this action. Rachel Rodgers and SBBI made numerous false statements in that September 6 letter, falsely representing that "as stated in the DMCA notices we [previously] filed," material found at 14 URLs relating to "http://themiddlefingerproject.org," is "infringing material [that] must not be replaced and access to it must continue to be disabled pending the outcome of the commenced litigation." As a result of Ms. Rodgers's September 6, 2014 notice, access to the 14 new URLs that Ms. Rodgers identified was disabled. (*See* Ex. 27, September 6, 2014 Letter from Rachel Rodgers to Bluehost.)

116. But Ms. Rodgers's and SBBI's original DMCA notice to Bluehost *did not* include these 14 URLs found under the HOM "The Middle Finger Project" website. (*See* Ex. 26, August 19, 2014 Letter from Rachel Rodgers to Bluehost.) Moreover, even a brief review of the material found at these 14 additional URLs demonstrates their non-infringing nature; they include historic blog posts created over one year ago at the time the SBB e-book was launched by HOM together with RRC in July 2013, and an affiliate page that did nothing more than note that The Middle Finger Project *no longer* had an affiliate relationship with Small Business Bodyguard. (*See* Ex. 28, Disabled themiddlefingerproject.org URLs and Pages.) Such blatantly false representations constitute a violation of the DMCA procedures.

117. Nevertheless, Bluehost complied immediately with Ms. Rodgers and SBBI's new, improper takedown requests relating to the Complaint filing. Bluehost disabled access to these 14 URLs, disrupting Ms. Ambirge's flagship brand and website—The Middle Finger Project— with broken links, customer service disruption, and complaints about missing material.

118. Meanwhile, HOM and Ms. Ambirge continued to receive unsettling information regarding Ms. Rodgers and SBBI's mishandling of the SBB Website, SBB e-book, and commissions for prior consummated sales. HOM learned that Ms. Rodgers and SBBI were failing to pay others, not just HOM. For example, an SBB affiliate responsible for generating numerous sales of the SBB e-book (and revenue to SBBI), Stephanie St. Claire, wrote to Ms. Ambirge:

> [I] feel pretty screwed over by your ex-partner Rachel. If you remember, just before you guys went your separate ways, I became an affiliate for SBB and sold to 20 of my people back in June. I'm still waiting on my $1,553.00 commission. I had to track Rachel down, after being told by Tressa that no one got back to me because everyone was on a "company retreat" . . . Then Rachel fessed up that she was having a company issue that is keeping her from paying everybody and I would have my commission by the end of September. I asked her to be in touch with me

to let me know when I would be paid, emailed her because she hasn't,
and still no answer.

(*See* Ex. 29, September 24, 2014 St. Claire Email.)

119.    Ms. Rodgers and SBBI's lack of response (and lack of payment to Ms. St. Claire)

continued:



(*See* Ex. 30, September 29, 2014 St. Claire Correspondence.)

120.    Finally, fed up with Ms. Rodgers's and SBBI's failure to pay her and lack of

communication, St. Claire requested that Ms. Ambirge pay SBBI's debt: "So I guess you are

going to have to pay me, and sue her [Rachel Rodgers] for it?" (*See* Ex. 31, St. Claire Text to

Ambirge.)

121.    Not content to drastically increase the price of the SBB e-book from $275 to

$495; to sabotage HOM's promotion efforts with last-minute, secret sales and deals; to deduct

from gross revenue earned by HOM's sales a phony "finance charge;" and to refuse to speak to HOM or its counsel in blatant disregard for its dispute resolution obligations, the Rachel Rodgers Businesses continue to deplete, degrade, and waste the valuable intellectual property assets created by HOM.

122.    On information and belief, the Rachel Rodgers Businesses have failed in their duty to perform their alleged contractual obligations in good faith. They have failed to pay monies due and owing not only to HOM but also to numerous affiliates. And, on information and belief, the Rachel Rodgers Businesses are planning to cease sales of the current SBB e-book such that HOM will be completely deprived of the benefit of its bargain. Unless the Rachel Rodgers Businesses are enjoined, the harm to HOM and its business reputation will be irreparable.

## FIRST COUNTERCLAIM

### Declaratory Judgment Of Rescission Against SBBI

123.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 122 above.

124.    SBBI, directly and through its agents involved in negotiating the JV Dissolution Agreement, engaged in fraud, misrepresentation, and other misconduct relating to it.

125.    At the time the parties entered into the JV Dissolution Agreement, RRC (now, SBBI) had a duty to disclose to HOM the existence and nature of the new, much higher price that it intended to start charging for purchase of the SBB e-book, and that it would deduct a new "finance fee" from the gross sales and commission calculation for HOM's monthly commissions under the terms of the JV Dissolution Agreement.

126.    Moreover, in violation of the JV Dissolution Agreement and the duty of good faith and fair dealing that accompanies it, SBBI deliberately and without justification refused to

comply with key terms of the JV Dissolution Agreement, including the dispute resolution procedures. SBBI's breaches are willful, substantial, and material. Indeed, SBBI's breaches are so fundamental that SBBI has wholly defeated the agreement's purpose, and has completely stripped HOM of its benefit of the bargain.

127.    Through their actions beginning immediately upon execution of the JV Dissolution Agreement, SBBI made it abundantly clear that it had no intention, and never had any intention of complying with the JV Dissolution Agreement's express terms or its spirit.

128.    As such, SBBI may no longer continue to reap the unilateral benefits of the JV Dissolution Agreement, and HOM is entitled to a judicial declaration that HOM properly rescinded the agreement on August 18, 2014, and that HOM's ownership and intellectual property rights are restored to their status before execution of the JV Dissolution Agreement, which is now null and void.

129.    HOM is further entitled to an accounting of all sales related to the Small Business Bodyguard venture since June 1, 2014, and HOM is entitled to 50% of the profits from those sales.

## SECOND COUNTERCLAIM

### Breach Of Duty Of Good Faith And Fair Dealing Against SBBI

130.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 129 above.

131.    Good faith and fair dealing is an implied covenant of a contract that "is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *Frankini v. Landmark Constr. of Yonkers, Inc.*, 937 N.Y.S.2d 80, 83 (App.

Div. 2012) (quoting *Aventine Inv. Mgt. v. Canadian Imperial Bank of Commerce*, 697 N.Y.S.2d

128, 130 (1999)). The covenant includes any promises that a contracting party could reasonably

assume were included in the agreement, and prohibits actions that "have the effect of destroying

or injuring the right of the other party to receive the fruits of the contract." *Atlas El. Corp. v.*

*United El. Grp., Inc.*, 910 N.Y.S.2d 476, 478 (App. Div. 2010) (quoting *Dalton v. Educ. Testing*

*Serv.*, 87 N.Y.2d 384, 389 (1995)).

132.    The JV Dissolution Agreement is subject to an implied covenant of good faith and

fair dealing.

133.    At the time the parties entered into the JV Dissolution Agreement, RRC (now,

SBBI) failed to disclose material terms of the JV Dissolution Agreement relating to SBBI's

intended price increase for the SBB e-book, as well as the alleged "finance fee" SBBI intended

to deduct from HOM's gross sales. HOM would never have signed the agreement as is, if it had

knowledge of these important facts.

134.    SBBI's deliberate refusal to comply with key terms of the JV Dissolution

Agreement including timely payment of commissions and the dispute resolution procedures has

deprived HOM of the right to receive its full benefits under the JV Dissolution Agreement.

135.    Moreover, SBBI's actions in failing to meet its financial obligations and other

administrative obligations to HOM and SBB affiliates is causing harm to the name and

reputation of Small Business Bodyguard and the SBB e-book and related marketing and sales

materials co-authored by HOM, thus injuring HOM's business reputation.

136.    As a proximate cause of SBBI's breach of the covenant of good faith and fair

dealing, HOM has suffered and continues to suffer damage to its reputation and business

interests, as well as monetary damage in an amount to be determined at trial caused by SBBI's bad faith conduct surrounding the JV Dissolution Agreement.

## THIRD COUNTERCLAIM

**Breach Of Fiduciary Duty Against SSBI, Rachel Rodgers Law Office, And Rachel Rodgers**

137.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 136 above.

138.    HOM had an attorney-client relationship with Ms. Rodgers and Rachel Rodgers Law Office beginning in February 2013 and that attorney-client relationship was in place when Ms. Rodgers negotiated the JV Agreement on behalf of her consulting business, RRC, against HOM.

139.    HOM negotiated the JV Agreement from a position in which its trusted advisor sat on the other side of the table and represented its own personal interests. HOM did not have its own advisor to look out for its interests when negotiating the JV Agreement with its lawyer on the other side. The contract provisions HOM agreed to are provisions that Ms. Rodgers drafted, with minor revisions.

140.    Ms. Rodgers and Rachel Rodgers Law Office breached their fiduciary duties to HOM by:

   a.   Negotiating, drafting and entering into an arms-length agreement against a client of the law office while having an adverse interest in the same matter;

   b.   Failing to file an important form with the IRS to elect the correct tax status and avoid double taxation of HOM revenue; and

   c.   Failure to notify HOM of a substantive rejection issued by the PTO to HOM's trademark application for "The Middle Finger Project."

141.    Ms. Rodgers and Rachel Rodgers Law Office also had an attorney-client relationship with HOM though its work as counsel to the joint venture between HOM and RRC, including registration and protection of the joint venture's intellectual property assets. This relationship began with the execution of the JV Agreement between HOM and RRC in May 2013 and ended when the joint venture was dissolved by the parties' agreement in June 2014.

142.    SBBI also violated its fiduciary duty as a joint venturer to its co-joint venturer, HOM, by taking for itself through bad faith and deception the joint venture's assets, with an intention to deprive HOM of its share of the joint venture and its assets.

143.    Ms. Rodgers, Rachel Rodgers Law Office and SBBI breached their fiduciary duties to HOM by:

      a.  Filing an incorrect declaration on behalf of HOM in connection with the trademark application for "Small Business Bodyguard" as a result of either ignorance of trademark practice rules and requirements or with the intent to perpetrate a fraud on the PTO;

      b.  Failing to file a proper copyright application meeting the requirements for registration with respect to Small Business Bodyguard and failing to exercise due care in following up with the Copyright Office.

      c.  Withholding HOM's payments for its 50% of the profits of the joint venture for the months of April and May 2014.

144.    HOM has suffered damages as a result of Ms. Rodgers's, SBBI's, and Rachel Rodgers Law Office's breach of fiduciary duties to both the Small Business Bodyguard joint venture and HOM.

145.     HOM had to hire new intellectual property counsel to investigate the status of the

Small Business Bodyguard intellectual property protection efforts and identify issues to be

addressed and corrected once it became clear that RRC was failing to meet its contractual and

fiduciary obligations to manage the joint venture's intellectual property.

146.     HOM has incurred significant expenses and legal fees for work that was supposed

to have been performed adequately by Ms. Rodgers and Rachel Rodgers Law Offices as

attorneys for HOM and for the joint venture.

## FOURTH COUNTERCLAIM

### Violation Of Section 512(f) Of The DMCA Against Rachel Rodgers and SBBI

147.     HOM restates and incorporates by reference the allegations in Paragraphs 1

through 146 above.

148.     Under Section 512 of the Copyright Act, any person who knowingly and

materially misrepresents in a DMCA take down notification that material is infringing is liable

for damages, including costs and attorneys' fees, incurred by an alleged infringer who is injured

by the misrepresentation, as a result of the service provider relying on the misrepresentation in

removing or disabling access to the material claimed to be infringing. 17 U.S.C. § 512(f).

149.     SBBI and Rachel Rodgers knowingly made misrepresentations to HOM's web

host and other providers, under penalty of perjury. As a result of those misrepresentations,

HOM's service providers removed and disabled access to HOM's material. Accordingly, these

misrepresentations were material within the meaning of Section 512(f).

150.     HOM further suffered injury and damages caused not only by its inability to sell

the SBB e-book, but also by the disruption of HOM's Internet businesses having no connection

at all to sales of the SBB e-book or Small Business Bodyguard, and the take down of non-infringing material and unrelated HOM content found on "The Middle Finger Project" website.

## FIFTH COUNTERCLAIM

### Violation Of The Federal Truth In Lending Act Against SBBI and Rachel Rodgers

151.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 150 above.

152.    Under SBBI's interpretation of the JV Dissolution Agreement (which HOM asserts is erroneous and unsupportable), SBBI and its principal, Rachel Rodgers, are in violation of the Truth In Lending Act, 15 U.S.C. § 1601, *et seq*.

153.    SBBI's offer to sell the SBB e-book in "2 Easy Payments of $277" violates this statute because it fails to meet several requirements, including required consumer disclosures.

154.    For example, SBBI's offer fails to inform the consumer that SBBI is charging a finance charge at all, let alone disclose the alleged "finance charge" in the form of annual percentage rates, which is required under 15 U.S.C. § 1638(a)(4). Under this disclosure requirement, SBBI must inform the consumer that it is paying an APR of approximately 27%, which is higher than most credit cards. The APR is calculated as follows: ($59/$218)*100 = 27.06% APR.

155.    SBBI also fails to inform the consumer of the following advertising disclosures required by 15 U.S.C. § 1664(d)(1):

    a.  The downpayment, if any;

    b.  The terms of repayment;

    c.  The rate of the finance charge expressed as an annual percentage rate.

156.    SBBI's offer also fails to fulfill other consumer notices and mandatory contract terms required under § 1638.

157.    SBBI's and Ms. Rodgers's failure to comply with these requirements demonstrates the falsity and bad faith of SBBI's position that its offer to consumers to purchase the SBB e-book in "2 Easy Payments of $277" is a "finance charge" that should be deducted from the Gross Sales Price due and owing to HOM.

## SIXTH COUNTERCLAIM

**Violation Of New Jersey's Retail Installment Sales Act Against SBBI and Rachel Rodgers**

158.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 157 above.

159.    Under SBBI's interpretation of the JV Dissolution Agreement (which HOM asserts is erroneous and unsupportable), SBBI and its principal, Ms. Rodgers, are in violation of New Jersey Statute § 17:16C-27 relating to retail installment contracts.

160.    SBBI's offer to sell the SBB e-book in "2 Easy Payments of $277" violates this statute because it fails to make the following required, separate disclosures:

    a.  The cash price of the goods which are the subject matter of the retail installment contract;

    b.  The down payment made by the retail buyer, indicating whether made in cash or in goods or partly in cash and partly in goods. The amount of the payment in cash and in goods shall be shown separately. A description of the goods, if any, sufficient for identification, shall be shown;

    c.  The unpaid cash balance (the difference between the cash price and the down payment);

d.   The amount, if any, if a separate charge is made therefor, included for insurance and other benefits, specifying the coverages and benefits;

e.   The amount of official fees;

f.   The principal balance, which is the sum of subsections (c), (d) and (e);

g.   The amount of the time price differential;

h.   The time balance, which is the sum of subsections (f) and (g), owed by the retail buyer to the retail seller, the number of installments required, the amount of each installment expressed in dollars and the due date or period thereof;

i.   The time sales price, which is the sum of subsections (b) and (h).

(*See* N.J. Stat. Ann. § 17:16C.)

161.    SBBI's and Ms. Rodgers's failure to comply with these requirements demonstrates the falsity and bad faith of SBBI's position that its offer to consumers to purchase the SBB e-book in "2 Easy Payments of $277" is a "finance charge" that should be deducted from the Gross Sales Price due and owing to HOM.

## SEVENTH COUNTERCLAIM

### Copyright Infringement Against SBBI And Rachel Rodgers

162.    HOM restates and incorporates by reference the allegations in Paragraphs 1 through 161 above.

163.    HOM is the owner of Copyright Registration No. TXu 001-908-648 for the Small Business Bodyguard Clinic (the "SBB Clinic Work"), and all attendant exclusive rights under the Copyright Act.

164.    On information and belief, Ms. Rodgers and SBBI without authorization from HOM, have reproduced, displayed, and distributed the SBB Clinic Work (in the identical or

substantially similar form) through its website, promotional emails, and social media including

Facebook and Twitter. And, on information and belief, unless permanently enjoined by this

Court, SBBI will continue to reproduce, display, and distribute the SBB Clinic Work without

HOM's authorization.

165.    On information and belief, Ms. Rodgers and SBBI without authorization from

HOM, have prepared derivative works based upon the copyrighted SBB Clinic Work, and unless

permanently enjoined, will continue to prepare derivative works based upon the copyrighted

SBB Clinic Work without HOM's authorization.

166.    HOM has suffered and will continue to suffer monetary damages caused by these

acts of infringement because SBBI's and Ms. Rodgers's actions usurp the potential market for

and value of the SBB Clinic Work.

167.    HOM has suffered and will continue to suffer irreparable harm to its business and

reputation unless SBBI and Ms. Rodgers are permanently restrained from continuing its

infringing activities.

## EIGHTH COUNTERCLAIM

### Copyright Infringement Against SBBI And Rachel Rodgers

168.    HOM restates and incorporates by reference the allegations in Paragraphs 1

through 167 above.

169.    HOM is the owner of Copyright Registration No. TXu 001-908-051 for the Small

Business Bodyguard Sales Page (the "SBB Sales Page Work"), and all attendant exclusive rights

under the Copyright Act.

170.    On information and belief, SBBI and Ms. Rodgers without authorization from

HOM, have reproduced, displayed, and distributed the SBB Sales Page Work (in the identical or

substantially similar form) through its website, promotional emails, and social media including Facebook and Twitter. And, on information and belief, unless permanently enjoined by this Court, SBBI will continue to reproduce, display, and distribute the SBB Sales Page Work without HOM's authorization.

171.    On information and belief, SBBI and Ms. Rodgers without authorization from HOM, have prepared derivative works based upon the copyrighted SBB Sales Page Work, and unless permanently enjoined, will continue to prepare derivative works based upon the copyrighted SBB Sales Page Work without HOM's authorization.

172.    HOM has suffered and will continue to suffer monetary damages caused by SBBI's and Ms. Rodgers's acts of infringement because their actions usurp the potential market for and value of the SBB Sales Page Work.

173.    HOM has suffered and will continue to suffer irreparable harm to its business and reputation unless SBBI is permanently restrained from continuing its infringing activities.

## PRAYER FOR RELIEF

WHEREFORE, HOM prays for relief as follows:

A.    For a judicial declaration that the JV Dissolution Agreement was properly rescinded and is null and void.

B.    For a judicial declaration that HOM has not and does not infringe any copyright, trademark or ownership rights relating to the SBB e-book or any other aspect of the former Small Business Bodyguard joint venture.

C.    For a judicial declaration that SBBI, Rachel Rodgers Law Office, and Rachel Rodgers have no right to the exclusive use of the SMALL BUSINESS BODYGUARD trademark.

D.      For an order directing SBBI to inform the PTO of this Court's Orders, insofar as they affect the status and validity of U.S. Trademark Application Serial No. 86/009,529.

E.      For a judicial declaration that HOM is the proper co-author of the SBB e-book and, therefore, enjoys all of the exclusive rights available to it under Section 106 of the Copyright Act, and all other rights pertaining to a co-author under the Copyright Act.

F.      For a permanent injunction pursuant to 15 U.S.C. § 1116 permanently enjoining and restraining SBBI, Rachel Rodgers Law Office, and Rachel Rodgers, as well as their officers, agents, servants, employees, attorneys, or other persons in active concert or participation with them, who receive actual notice of this injunction, from:

      a.   infringing HOM's copyright in the Small Business Bodyguard Clinic Work, Copyright Registration No. TXu 001-908-648;

      b.   infringing HOM's copyright in the Small Business Bodyguard Sales Page Work, Copyright Registration No. TXu 001-908-051;

      c.   issuing any DMCA take down notices to HOM's service providers based on alleged rights relating in any way to the Small Business Bodyguard assets and business which arose out of the former joint venture between the parties or other HOM assets or businesses;

      d.   otherwise interfering in any manner with HOM's full enjoyment and exercise of its copyright, trademark and other rights arising out of HOM's development and authorship of the SBB e-book and related materials.

G.      For an accounting to determine the amounts due and owing to HOM from any and all sales of the SBB e-book and any related goods or services from June 1, 2014 to the present, and to award those amounts, including pre-judgment interest, to HOM.

H.     For an accounting to determine the accuracy of the amounts paid out to HOM during the lifetime of the joint venture between the parties, and to award any amounts, including pre-judgment interest, necessary to correct prior payments to HOM.

I.     For an award of damages including, where appropriate, incidental, consequential, punitive, exemplary and treble damages, in an amount to be determined at trial, for the injury and expense suffered by HOM as a result of the Rachel Rodgers Businesses' conduct.

J.     For an order awarding HOM its costs, expenses, and reasonable attorneys' fees as provided by law; and

K.     For any further relief the Court deems just and proper.


Dated: October 6, 2014                          Respectfully submitted,


                                        */s/ Kandis M. Koustenis*
                                        _____
                                        Antigone G. Peyton (*pro hac vice* to be filed)
                                        Kandis M. Koustenis
                                        CLOUDIGY LAW PLLC
                                        8300 Greensboro Drive, Suite 1250
                                        McLean, VA 22102
                                        Tel: (703) 436-2033
                                        Fax: (703) 436-2268
                                        Email: antigone.peyton@cloudigylaw.com
                                        Email: kandis.koustenis@cloudigylaw.com

                                        Norris Wolff
                                        KLEINBERG, KAPLAN, WOLFF, COHEN, P.C.
                                        551 Fifth Avenue
                                        New York, NY 10176
                                        Tel: (212) 880-9860
                                        Fax: (212) 986-8866
                                        Email: nwolff@kkwc.com

                                        *Attorneys for House of Moxie, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 6, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to counsel for the parties. Service copies were also provided via email to counsel for Plaintiff:

> Benjamin S. Thompson
> Tim Bukher
> THOMPSON BUKHER LLP
> 369 Lexington Avenue
> Suite 327
> New York, NY 10017
> Email: bthompson@thomplegal.com
> Email: tbukher@thomplegal.com

*/s/ Kandis M. Koustenis*