**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SMALL BUSINESS BODYGUARD INC.,

       *Plaintiff/Counterclaim Defendant,*

– against –

HOUSE OF MOXIE, INC.,

       *Defendant/Counterclaim Plaintiff,*

– against –

RACHEL RODGERS LAW OFFICE, PC and
RACHEL RODGERS,

       *Additional Counterclaim Defendants.*

**Civ. Action No. 14-CV-7170**
Judge Colleen McMahon
Magistrate Judge Michael H. Dolinger

ECF Case


**PLAINTIFF AND COUNTERCLAIM DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER TO DISABLE CERTAIN WEBSITES AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**


THOMPSON BUKHER LLP
369 Lexington Avenue
Suite 327
New York, New York 10017
(212) 920-6050

*Attorneys for Plaintiff and*
*Counterclaim Defendants*

# **Table of Contents**

TABLE OF AUTHORITIES ............................................................................................... iii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 5

    A.    SBBI Is Likely to Succeed on the Merits .......................................................... 6

    B.    SBBI Will Suffer Irreparable Harm in the Absence of Temporary and Preliminary Injunctive Relief and Money Damages Are an Insufficient Remedy ....................................... 8

    C.    The Balance of Hardships Tips in SBBI's Favor ............................................... 9

    D.    Public Policy Favors Injunctive Relief ............................................................. 10

CONCLUSION ................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 730 F. Supp. 1209 (E.D.N.Y. 1990) ............................................................................................................. 8

*BDO Seidman v. Hirshberg*, 93 N.Y.2d 382 (N.Y. 1999) ............................................................. 7

*Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26 (2d Cir. 1987) ...................................... 9

*Echo Design Group, Inc. v. Zino Davidoff S.A.*, 283 F.Supp.2d 963 (S.D.N.Y. 2003) ................. 5

*Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158 (S.D.N.Y. 2006) ............................................. 7

*FTI Consulting, Inc. v. PriceWaterhouseCoopers LLP*, 8 A.D.3d 145 (1st Dep't 2004) (United States) ....................................................................................................................... 7, 8

*Global Switching Inc. v. Kasper*, No. CV-06-412 (CPS), 2006 WL 1800001 (E.D.N.Y. June 28, 2006) ........................................................................................................................ 9, 10

*Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477 (S.D.N.Y. 2007) .................... 7, 11

*Pontone v. York Group, Inc.*, No. 08-civ-6314 (WHP), 2008 WL 4539488 (S.D.N.Y. Oct. 10, 2008) ............................................................................................................................. 8

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261 (E.D.N.Y. 2011) .................. 6

*Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267 (N.Y. 1963) ........................................................... 7

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010) .................................................................... 6, 10

*Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F.Supp.2d 577 (S.D.N.Y. 2002) ............................................................................................................................. 5

*Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999) ......................................................... 9

Plaintiff Small Business Bodyguard, Inc. ("**SBBI**") hereby apply *ex parte*, pursuant to F.R.C.P. 65 for a temporary restraining order to disable certain websites created and operated by defendant House of Moxie, Inc. ("**HOM**") in direct violation of restrictive covenants set forth in the governing agreement between the parties that prohibits HOM from such competitive conduct. SBBI further move for an order to show cause for preliminary injunction of the same conduct until this action is resolved.

## PRELIMINARY STATEMENT

This matter is based in the seller's remorse of HOM after it sold its assets in the Small Business Bodyguard joint venture to SBBI.  HOM attempted to rescind the agreement entered into between the parties less than three months after its execution, and promptly began to violate numerous provisions of the agreement—HOM's conduct was the genesis of this action. Subsequently, HOM sought to rescind the agreement, filed counterclaims against SBBI, impleaded Rachel Rodgers (owner of SBBI) individually, impleaded Rodgers's law firm, and asserted various claims against all parties.

Recently, HOM filed a Rule 41 notice of voluntary dismissal of its claim for rescission, effectively cementing the existence of the subject agreement, and sought expedited review of the open motions in this matter.  The Court denied the request for expedited review.

Now, HOM has launched an online website offering an e-book and tutorial lessons that directly compete with SBBI in certain of its components, and is in direct violation of the restrictive covenant in the agreement prohibiting HOM from doing so.  Not only has HOM, once again, breached the agreement, but now its counsel in this matter, Cloudigy Law PLLC ("**Cloudigy**"), has joined HOM to produce the competing product, serving as an instructor in the online course and providing legal guidance to its consumers.  SBBI seeks to enjoin HOM from

continuing with such egregious conduct.

## STATEMENT OF FACTS

SBBI provides information and resources to entrepreneurs and emerging businesses under the "Small Business Bodyguard" brand (the "**Brand**") through e-books, online tutorials and information videos, and documents and forms for consumers to use in their ordinary course of business (the "**Product**"). *See* the Declaration of Rachel Rodgers, dated March 13, 2015, annexed hereto (the "**Rodgers Dec.**") at ¶ 2.  Rachel Rodgers formed SBBI (f/k/a Rachel Rodgers Consulting, LLC), and on or about May 5, 2013, HOM and SBBI entered into a joint venture agreement, which governed the structure and operations of the Small Business Bodyguard joint venture (the "**JV Agreement**").  *Id.* at ¶ 3.  A copy of the JV Agreement is annexed to the Rodgers Dec. at **Exhibit A**.

The Product was formally released in July 2013, and sold exclusively on www.smallbusinessbodyguard.com.  *See id.* at ¶ 4.  In or about January 2014, SBBI raised issues with HOM's failure to perform under the JV Agreement.  *Id.* at ¶ 5.  In this discussion, SBBI offered to purchase HOM's interest in the joint venture, and the parties began a nearly six-month negotiation that resulted in an agreement between the parties that $15,000 be paid to HOM and a limited license of the Product and Brand be granted to HOM.  *See* Rodgers Dec., ¶ 6.   The parties drafted a joint venture dissolution agreement to memorialize the transaction, which dissolved the Small Business Bodyguard joint venture and set forth the terms of the purchase. *Id.* at ¶ 7.  This agreement was executed on June 7, 2014 between SBBI and HOM (the "**JV Dissolution Agreement**").  *Id.* at ¶ 8.  A copy of the JV Dissolution Agreement is annexed to the Rodgers Dec. at **Exhibit B**.

The term of the JV Dissolution Agreement is three years from the effective date, June 1, 2014.  *See* JV Dissolution Agreement, Rodgers Dec., at § 5.1. Pursuant to the JV Dissolution Agreement, HOM transferred all interest and ownership in any assets of the joint venture, including the Product and Brand, to SBBI.  *See* Rodgers Dec., ¶ 9; *see also* JV Dissolution Agreement, Rodgers Dec., Ex. B., at §§ 2.1–2.  Further, the JV Dissolution Agreement possesses the following restrictive covenant:

> During the term of this Agreement, HOM (whether directly or indirectly, for compensation or not, for HOM's own account or on behalf of another) will not become involved or engaged in a business, or plan to become involved or engaged in a business that provides legal services, or sells products or goods (including books, e-books, and other works of authorship) that contain legal advice.

JV Dissolution Agreement, Rodgers Dec., Ex. B., at § 11.1.  One of the primary considerations for SBBI's purchase of the HOM's interest was to acquire the Brand's good will and retain exclusivity of product sales of the Brand to HOM's mailing list, and thus this provision sought to prevent HOM from offering products or services competitive with the Product and Brand to anyone, but especially HOM's mailing list, which constitutes a significant portion of SBBI's customer list.  Rodgers Dec., ¶¶ 10, 11.

On or about March 3, 2015, HOM launched a website at the domain www.sentencesandmoney.com (the "**Violative Website**"), promoting its new product, Sentences and Money ("**SM**"), which is "[a] 4-week online mentorship program for aspiring professional writers who want to stop screwing around—and start making real money," to the general public and to HOM's mailing list.  Rodgers Dec., ¶ 12.  A screenshot of the website landing page and indication of HOM's ownership are attached to the Rodgers Dec. at **Exhibit C**.  SM encourages consumers to sign up for its course as either a "Traditional Student" for $299, or as an "Intensive Protégé" for $699.  In either case, the purchaser will (i) "[a]ttend university-style class" two days

per week; (ii) "[a]sk questions & get feedback during in-class discussions"; and (iii) "[d]ownload and keep all mentorship materials, including downloadable, done-for-you templates and all expert contributions."  Rodgers Dec., ¶ 13.  A screenshot of the Violative Website's product offerings is attached to the Rodgers Dec. at **Exhibit D**.

The SM course content, as portrayed on the Violative Website, includes the following:

- Chapter One: Intro to Writing as a Profession, The Art of Finding Your Edge & Setting Up Your Business to KILL. (*Not human beings.*)

    o Getting all of the icky formal 'business set up' stuff squared away—do you need a separate bank account? What do you do about taxes? What about things like EIN numbers? Paypal accounts? Do you need to worry about this stuff?

    o Special Guest Expert: Kyle Durand, House of Moxie Tax Attorney and Partner of Precept Law

- Chapter Four: Proposals, Quotes, Contracts & Service Agreements, Oh My! What You Need to Know, What You Need to Send, and *What You Need to Say*.

    o A process for developing a proposal that'll sell itself . . . .

    o How to get client to spend double, triple or even quadruple the amount of money that they were going to otherwise—all with this little tweak.

    o The anatomy of (the smart copywriter's) contracts & service agreements . . . . We'll walk you step-by-step through House of Moxie's own client service agreement, what each section means, and what you absolutely need to have in your own.

    o Special Guest Expert: Antigone Peyton, Founder & CEO, Cloudigy Law, specializing in intellectual property litigation and strategic counseling around patents, trademarks, copyrights, unfair competition, DMCA violations, and acting as lead counsel in civil lawsuits across the United States.  Cloudigy Law is House of Moxie's official intellectual property counsel.

- Chapter Five: NEW CLIENT 101: Setting Expectation the Right Way, (Smartly) Kicking Off Your Work Together & Doing the One Thing Upfront That'll Reduce Your Workload *by 50% Later*.

> o How to run an expert client onboarding process involving specific steps and measures to prevent you from having to do double the work later . . . .

- Chapter Seven: *'I Hate It.' 'Is it Done Yet?' 'Could We Do This TOOOOO?'* Managing Your Clients Like a Pro (And Not Ending Up With a Homicide Charge).

> o What to do if and when the entire project flops—do you refund them their money? What do you say? What are the ways to handle this professionally?

Screenshots of Violative Website showing SM course schedule, attached to the Rodgers Dec. at **Exhibit E**. Each of these items in the SM course content show that SM is a business that provides legal services, or sells products or goods (including books, e-books, and other works of authorship) that contain legal advice; specifically, business formation, contract drafting, client engagement agreements, and client termination issues. Rodgers Dec., ¶ 14.

Registration for the SM course is currently open, and the course is scheduled to begin on March 17, 2015. *Id.* at ¶ 15. SBBI continues to operate pursuant to the JV Dissolution Agreement. *Id.* at ¶ 16.

## ARGUMENT

It is well established that in this Circuit the standard for an entry of a temporary restraining order is the same as for a preliminary injunction. *See, e.g., Echo Design Group, Inc. v. Zino Davidoff S.A.*, 283 F.Supp.2d 963, 966 (S.D.N.Y. 2003); *Spencer Trask Software & Info. Servs., LLC v. RPost Int'l, Ltd.*, 190 F.Supp.2d 577, 580 (S.D.N.Y. 2002) ("The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical."). Generally, to obtain a preliminary injunction, a party must demonstrate:

> (1) of a likelihood of success on the merits; (2) that the plaintiff is likely to suffer irreparable injury in the absence of an injunction; (3) that remedies at law, such as monetary damages, are inadequate to compensate for that injury; (4) that the balance of hardships tips in the plaintiff's favor; and (5) that the public interest will not be disserved by the issuance of a preliminary injunction.

*Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.*, 778 F. Supp. 2d 261 (E.D.N.Y. 2011) (*quoting v. Colting*, 607 F.3d 68, 74–75 (2d Cir. 2010)). Thus, the following argument applies to the issuance of both a temporary restraining order and a preliminary injunction.

A.    **SBBI Is Likely to Succeed on the Merits**

SBBI can clearly show that it is likely to succeed on the merits of its submission. Unequivocally, the JV Dissolution Agreement is in effect, as admitted by HOM when it withdrew its claim for rescission. The JV Dissolution Agreement plainly expresses a restrictive covenant stating that HOM cannot engage in a business providing legal advice for the three-year term of the agreement, and HOM agreed to be bound by this provision. *See* JV Dissolution Agreement, Rodgers Dec. Ex. B, § 11.1. That restrictive covenant is reasonable. HOM is unquestionably engaged in a business, SM, which provides legal advice to its consumers. Thus, HOM is in direct violation of the express restrictive covenant that it agreed to in the JV Dissolution Agreement.

Courts test the reasonableness of restrictive covenants by "focus[ing] on the particular facts and circumstances giving context to the agreement." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 390 (N.Y. 1999). Restrictive covenants in employment contracts and in contracts for the sale of a business are subject to the same basic test, but a less strict standard applies to restrictive covenants in the sale of a business. *See, e.g., Purchasing Assocs. v. Weitz*, 13 N.Y.2d 267, 272 (N.Y. 1963); *see also Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 483–84 (S.D.N.Y. 2007) ("New York law . . . favors enforcement of restrictive covenants in the

sale of business context").  The two elements of a restrictive covenant most commonly analyzed are its duration and scope.  *See Estee Lauder Cos. v. Batra*, 430 F. Supp. 2d 158, 179–80 (S.D.N.Y. 2006).

Geographical coverage of a restrictive covenant is reasonable to the extent the circumstances dictate.  *See id.* at 181.  "Broad geographic limitations have been deemed reasonable where warranted by the nature and scope of the [seller's] business." *Id.* (pertaining to an employment contract, and finding that "worldwide" restriction was reasonable given the scope of the business); *see FTI Consulting, Inc. v. PriceWaterhouseCoopers LLP*, 8 A.D.3d 145, 145–46 (1st Dep't 2004) (United States); *Business Intelligence Servs., Inc. v. Hudson*, 580 F. Supp. 1068 (S.D.N.Y. 1984) (Worldwide).

Here, the Product and Brand are disseminated over the internet exclusively, and its customers can and do extend anywhere in the world where there is internet access and a comprehension of the English language.  *See* Rodgers Dec., ¶ 4.  Thus, the JV Dissolution Agreement's blanket restriction of a very narrow type of competition is perfectly reasonable.

The duration of a restrictive covenant in the context of a sale of assets or business—"the looser 'reasonableness' standard"—is found reasonable if not found to be excessive.  *Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co.*, 730 F. Supp. 1209, 1214–15 (E.D.N.Y. 1990) (enforcing 10-year restrictive covenant); *see FTI Consulting*, 8 A.D.3d at 145–46 (enforcing 3-year restrictive covenant).

Here, the term of the JV Dissolution Agreement is three years, and the restrictive covenant that HOM agreed to lasts for that duration.  This is reasonable given the context of the agreement, which allows SBBI to prosper on the good will and customer list that it purchased from HOM, and further allows HOM to participate in affiliate sales throughout that time.  "New

York courts have found three to five year restrictions reasonable in the context of the sale of a business." *Pontone v. York Group, Inc.*, No. 08-civ-6314 (WHP), 2008 WL 4539488 *5 (S.D.N.Y. Oct. 10, 2008).  The three-year duration of the restrictive covenant is enforceable.

Moreover, "[r]easonable restrictive covenants ancillary to the sale of a business are routinely enforced to protect the goodwill paid for by the purchaser." *Baker's Aid*, 730 F. Supp. at 1214.  "Under New York law, the purchaser of the good will of a business obtains the exlusive right 'as between' himself and the seller to exploit established customer loyalty. . . . This implied covenant against the solicitation of former customers is neither limited by time nor subject to the test of reasonableness." *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26 (2d Cir. 1987).

SBBI purchased the good will and assets of the Product and Brand through a bargained-for, heavily negotiated transaction.  Not only does SBBI have the right to enforce the restrictive covenant in the JV Dissolution Agreement, but it has the right to enforce the implied right that HOM will not compete against the business that it gained substantial consideration for by selling it to SBBI.

Accordingly, SBBI has shown that it is, at least, likely to succeed on the merits.

**B. SBBI Will Suffer Irreparable Harm in the Absence of Temporary and Preliminary Injunctive Relief and Money Damages Are an Insufficient Remedy**

"Generally, when a party violates a non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm." *Global Switching Inc. v. Kasper*, No. CV-06-412 (CPS), 2006 WL 1800001 *12 (E.D.N.Y. June 28, 2006) (citation and internal quotation marks omitted).  "[I]t would be very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 68–69 (2d Cir. 1999).  Even under a stricter standard in

analyzing employment agreement restrictive covenants, "courts have often taken a somewhat relaxed approach to the irreparable harm inquiry, and in certain circumstances [(such as potential misappropriate of trade secrets)] have found it appropriate to presume the existence of such an injury," which is especially so "when such activity is prohibited by a restrictive covenant." *Global Switching*, 2006 WL 1800001 at *12.

In this event, HOM is attempting to take back, among other things, the customer list it sold to SBBI, and is further seeking to encroach on the success of the sale of the Product and Brand, which it also sold to SBBI. It would be extremely difficult, if not impossible, to measure the ongoing loss of customers and good will to SBBI if HOM is not enjoined from this violative conduct. Indeed, not enjoining HOM immediately effectively licenses their conduct, which would continue most likely in multiple iterations, making the calculation of damages due unachievable.

Without question, HOM's conduct threatens imminent and permanent harm that cannot be remedied with money damages.

### C. **The Balance of Hardships Tips in SBBI's Favor**

When determining whether to issue injunctive relief, a Court must also assess the balance of hardships between the parties. *See Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010). This assessment goes hand in hand with the irreparable harm analysis. *Id.*

Here, the balance of hardships unquestionably favors SBBI. The only hardship that HOM would endure would be to abide by the restrictive covenant it agreed to in the JV Dissolution Agreement. HOM would be forced to undo the work it has committed to SM, but this pales in comparison to the work and expense that SBBI has committed to the Product and Brand. SBBI would suffer loss of customers, loss of good will, dilution of the Product through

competition with HOM, and diminution of the value of the assets for which it paid HOM. Further, HOM is fully aware that it is violating the restrictive covenant, and cannot claim that it did not risk injunctive action.  SBBI attempted to take no risk by insisting on the restrictive covenant, which is now wholly undermined through HOM's conduct.

SBBI would face significantly more hardships if injunctive relief is not granted than would HOM if it is not.

**D.  Public Policy Favors Injunctive Relief**

No public policy is offended by the enforcement of this restrictive covenant.  "Courts generally enforce restrictive covenants ancillary to a sale of business under the premise that a buyer of a business should be permitted to restrict his seller's freedom of trade so as to prevent the latter from recapturing and utilizing, by competition, the good will of the very business which he transferred for value."  *Payment Alliance,* 530 F. Supp. 2d at 483.  Indeed, failure to enforce this covenant would offend public policy because HOM would set precedent that one is allowed to compete with a company it has sold, notwithstanding a binding agreement to the contrary.

Accordingly, public policy favors immediate injunctive relief.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Small Business Bodyguard, Inc. respectfully requests

that the Court grant its application for a temporary restraining order and preliminary injunction.

Dated: New York, New York
       March 13, 2015

By: _____
    Benjamin S. Thompson (BT2176)
    Tim Bukher (TB1984)
    369 Lexington Avenue, Suite 327
    New York, NY 10017
    (212) 920-6050

    *Attorneys for Plaintiff*
    *and Counterclaim Defendants*